229 P.3d 233

Shawn and Penny EDWARDS, husband and wife, Plaintiffs/Appellants,

v.

BOARD OF SUPERVISORS OF YAVA-PAI COUNTY, a political subdivision of the State of Arizona; and Yavapai County Flood Control District, a political subdivision of the State of Arizona, Defendants/Appellees.

No. 1 CA–CV 08–0427.

Court of Appeals of Arizona,
Division 1, Department B.

March 30, 2010.

Shawn and Penny Edwards, Dewey, Appellants, In Propria Persona.

Jones Skelton & Hochuli PLC by Eileen Dennis GilBride and Jennifer A. Baker, Phoenix, Attorneys for Defendants/Appellees.

## OPINION

OROZCO, Judge.

¶ 1 Appellants, Shawn and Penny Edwards (the Edwards), appeal the trial court's grant of summary judgment in favor of Appellees, Yavapai County Board of Supervisors and the Yavapai County Flood Control District (County). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In 2004, the Edwards were leasing a house located on Havasupai Trail in Dewey, Arizona. At that time, the property's owners were Ms. Diehl (Diehl) and Ms. Felts (Felts). The house was constructed in 1974, when no applicable building codes or zoning regulations relating to elevation were in effect. As a result, the house was built over a low spot.

¶ 3 The property is part of the Prescott Country Club housing development. In 1985, the Prescott Country Club formed the Prescott Country Club Improvement District (District) to improve roads within the development, including installing culverts for drainage. The District hired an engineer to design the roads and drainage infrastructure in the Prescott Country Club area, including a culvert which runs under Havasupai Trail near the Edwards' residence.

¶ 4 This culvert was designed and built to withstand a twenty-five year water event. In 1987, the roadways within the Prescott Country Club were dedicated to the County. In 1997, the District advised Diehl and Felts, in a letter, that their property could potentially flood from water backing up behind the culverts under Havasupai Trail.

¶ 5 In July and August of 2004, two rainstorms occurred in the Prescott Country Club area. The rainfall caused significant water runoff along Havasupai Trail. As a result, water overflowed the culvert near the Edwards' residence and flooded their home. The flooding caused damage to landscaping, the home's interior and personal property in the home.

¶ 6 The Edwards sued the County for damages to their property on theories of negligence and gross negligence in the design, construction and maintenance of the streets, drainage culverts and ditches in the vicinity of their residence. The County moved for summary judgment based on qualified immunity pursuant to Arizona Revised Statutes (A.R.S.) section 12–820.03 (2003). The trial court granted the motion for summary judgment and the case was dismissed with prejudice.

¶ 7 The Edwards filed a timely notice of appeal and we have jurisdiction pursuant to A.R.S. § 12–2101.B (2003).

## DISCUSSION

¶ 8 We review a grant of summary judgment *de novo* and view the facts in the light most favorable to the non-moving party. *Andrews v. Blake,* 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). A court may grant summary judgment "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). The determination of whether a genuine issue of material fact exists is based on the record made in the trial court. *Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken,* 179 Ariz. 289, 292, 877 P.2d 1345, 1348 (App.1994).

## Immunity under A.R.S. § 12–820.03

¶ 9 The Edwards argue summary judgment was improper because the County failed to present evidence to support immunity under § 12–820.03. In particular, the Edwards cite a lack of evidence showing the construction of the road and culvert was "state of the art." Additionally, the Edwards contend no evidence was presented as to "what warning had been given of the substandard condition."

¶ 10 Pursuant to § 12–820.03:

Neither a public entity nor a public employee is liable for an injury arising out of a plan or design for construction or maintenance of or improvement to highways, roads, streets, bridges, or rights-of-way if the plan or design is prepared in conformance with generally accepted engineering or design standards in effect at the time of the preparation of the plan or design, provided, however, that reasonably adequate warning shall be given as to any unreasonably dangerous hazards which would allow the public to take suitable precautions.

¶ 11 From the statute's plain language, the County is immune if it can show its drainage was prepared in conformance with generally accepted engineering or design standards in effect at the time and the public was given reasonably adequate warning of any unreasonably dangerous hazards. A.R.S. § 12–820.03.

¶ 12 The Edwards first argue the County's twenty-five year water event design "does not necessarily equal the *state of the*

*art* in that type of construction." [1] (Emphasis added.) Assuming the Edwards are merely substituting "state of the art" for the statute's "generally accepted engineering or design standards," we find the County nevertheless presented sufficient evidence to show the culvert was built according to generally accepted engineering and design standards in effect at the time the culvert was built.

¶ 13 The County presented deposition testimony from its Floodplain Administrator, K. Spedding (Spedding), that the culvert was designed and engineered to withstand a twenty-five year water event. Additionally, the Hydrologic Design Data Sheet referring to the culvert's construction shows the culvert was built to withstand a twenty-five year water event. Spedding also testified that at the time the culvert was built, "water crossings [were] designed to [withstand] the 25–year storm event within the culvert."

¶ 14 The Edwards do not dispute this evidence. In fact, the Edwards concede "the record demonstrates that the culvert, as constructed and maintained by the [ ] District, was designed to meet a 25 year storm event." Furthermore, the Edwards do not dispute the County's assertion that the twenty-five year water event "was and is the design standard applicable to Yavapai County for this type of roadway." Because the Edwards offered no evidence disputing whether the culvert was built according to generally accepted engineering and design standards in effect when it was built, we find no genuine issue of material fact as to the design element of § 12–820.03.

¶ 15 Next, the Edwards argue the record contains no evidence the County complied with § 12–820.03's warning requirement. However, the record indicates otherwise. In 1997, the Yavapai County Flood Control District advised Diehl and Felts of the possibility of flood damage to their property. Specifically, the warning letter from the District stated the "parcel may be subject to flooding from Pima Wash, water has backed up in [the] past behind culvert under Havasupai Trail." In that same letter, the County also advised Diehl and Felts "to review [their] building plans with regard to any potential flooding hazard."

¶ 16 Nevertheless, the Edwards contend the Diehl and Felts letter did not describe "what 'suitable precautions' ... an owner could take to avoid the water problem." However, § 12–820.03 does not require the County to give *potential precautions* to flooding hazards. Rather, the statute requires only a reasonably adequate warning "which would allow the public to take suitable precautions." A.R.S. § 12–820.03. We find the County's letter to Diehl and Felts gave adequate warning of the potential for flooding and allowed the property owners in this case "to take suitable precautions." *Id.*

¶ 17 Furthermore, the Edwards provided no evidence or testimony controverting the County's satisfaction of § 12–820.03's warning requirement. In fact, the Edwards admitted the County's allegations regarding the warning letter in their Controverting Statement of Facts. Accordingly, we find no genuine issue of material fact as to § 12–820.03's warning requirement.

¶ 18 Because no genuine issue of material fact exists as to whether the County satisfied the elements of § 12–820.03, we find the County was entitled to judgment as a matter of law and affirm the trial court's grant of summary judgment.

**Premature Summary Judgment**

¶ 19 Lastly, the Edwards contend summary judgment was improper because it was granted before discovery was complete. However, as the County suggests, if the Edwards required more discovery in order to respond to the motion for summary judgment, it was incumbent upon the Edwards to request "a continuance to permit affidavits to be obtained or depositions to be taken or

---

1. The term "state of the art" typically applies to products liability issues and is defined as "[t]he level of pertinent scientific and technical knowledge existing at the time of a product's manufacture, and the best technology reasonably available at the time the product was sold." Black's Law Dictionary 1446 (8th ed. 2004). This is not the standard stated in A.R.S. § 12–820.03. Under § 12–820.03, the appropriate standard is "generally accepted engineering or design standards in effect at the time of the preparation of the plan or design."

discovery to be had or ... such other order as is just." Ariz. R. Civ. P. 56(f). Because the Edwards did not seek such relief from the trial court, this issue is waived on appeal. *Rhoads v. Harvey Publications, Inc.*, 131 Ariz. 267, 269, 640 P.2d 198, 200 (App.1981).

## CONCLUSION

¶ 20 For the reasons stated above, we affirm the trial court's grant of summary judgment in favor of the County.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge, and SHELDON H. WEISBERG, Judge.