IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

DIANA GLAZER, THE SURVIVING SPOUSE OF MICHAEL GLAZER, DECEASED,
ON HER OWN BEHALF AND AS STATUTORY TRUSTEE FOR LINDSAY GLAZER
AND DAVID GLAZER, SURVIVING CHILDREN OF MICHAEL GLAZER; DIANA
GLAZER, AS SURVIVING PARENT OF SYDNEY GLAZER, DECEASED,
*Plaintiff/Appellee,*

*v.*

STATE OF ARIZONA, A GOVERNMENT ENTITY,
*Defendant/Appellant.*

No.  CV-14-0123-PR
Filed May 8, 2015

Appeal from the Superior Court in Maricopa County
The Honorable John Christian Rea, Judge
No.  CV2009-001261
**AFFIRMED**

Opinion of the Court of Appeals, Division One
234 Ariz. 305, 321 P.3d 470 (2014)
**VACATED IN PART**

COUNSEL:

John P. Leader, The Leader Law Firm, Tucson; Christopher J. Zachar, The
Zachar Law Firm, P.C., Phoenix; and Timothy J. Aiken (argued), Aiken &
Scoptur, P.C., Milwaukee, WI, Attorneys for Diana Glazer

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor
General, Daniel P. Schaack, Fred Zeder (argued), Assistant Attorneys
General, Phoenix, Attorneys for State of Arizona

Barbara LaWall, Pima County Attorney, Dennis C. Bastron, Deputy County
Attorney, Civil  Division, Tucson, Attorneys for Amicus Curiae Pima
County

Eileen Dennis GilBride, Jennifer B. Anderson, Jones, Skelton & Hochuli, P.L.C., Phoenix, Attorneys for Amici Curiae Apache, Cochise, Gila, Graham, Greenlee, La Paz, Maricopa, Mohave, Navajo, Pinal, Santa Cruz, Yavapai, and Yuma Counties

Kathleen L. Wieneke and Nicholas D. Acedo, Struck Wieneke & Love, P.L.C., Chandler, Attorneys for Amicus Curiae League of Arizona Cities and Towns

Stanley G. Feldman, Haralson, Miller, Pitt, Feldman & McAnally, P.L.C., Tucson, and David L. Abney, Knapp & Roberts, P.C., Scottsdale, Attorneys for Amicus Curiae The Arizona Association for Justice/Arizona Trial Lawyers Association

John C. Lemaster and Naomi Thurston, Ryley Carlock & Applewhite, Phoenix; W. Raymond Johnson III, Johnson Law Group, PLC, Mesa, and Lynn Eric Goar, Law Office of Lynn Eric Goar, PC, Tucson, Attorneys for Amicus Curiae Vicki Laffoon, et al.

————————

JUSTICE TIMMER authored the opinion of the Court, in which VICE CHIEF JUSTICE PELANDER, JUSTICES BERCH and BRUTINEL joined, and CHIEF JUSTICE BALES dissented in part and concurred in the result.

JUSTICE TIMMER, opinion of the Court:

¶1 Section 12-820.03, A.R.S., provides public entities a "state of the art" affirmative defense against claims for injuries arising out of a plan or design for construction of a roadway. To establish the defense, the public entity must show that the plan or design, when created, conformed to generally accepted engineering or design standards and that warnings of any unreasonably dangerous hazards were given that were adequate to permit the public to take suitable precautions. We today hold that the affirmative defense remains available even if material changes to travel have rendered the roadway substandard. Because the State failed to establish every element of the defense in this case, however, the trial court did not err by denying the State's motions for judgment as a matter of law.

## I.     BACKGROUND[1]

**¶2**     In 2007, Melissa Sumpter was driving in the mid-afternoon behind a semi-truck on an eastbound, two-lane stretch of Interstate 10 ("I-10") southeast of Phoenix.  As Sumpter started to pass the truck, it began to move into her lane, causing her to swerve to the left to avoid a collision. She lost control of her vehicle, which crossed through the eighty-four foot dirt median into the westbound lanes, and crashed head-on into Diana Glazer's vehicle, killing Glazer's husband and daughter and seriously injuring Glazer.

**¶3**     Glazer sued the State for failing to install a median barrier in the area of the accident.  The State named as non-parties at fault the unidentified truck driver and Sumpter.

**¶4**     The State moved for summary judgment based on A.R.S. § 12-820.03.  It argued that because a median barrier was not required when I-10 was designed and constructed in 1967 and the Glazers' injuries arose from the absence of a barrier, § 12-820.03 relieved the State from liability. Although it presented evidence that the roadway was not unreasonably dangerous, the State did not address § 12-820.03's warning requirement. Opposing the motion, Glazer argued that § 12-820.03 did not apply to her claim, and she presented opinion evidence that the absence of a median barrier rendered this stretch of I-10 unreasonably dangerous.

**¶5**     The trial court ruled that § 12-820.03 did not apply because Glazer did not allege that I-10 was unsafe when it was designed but, rather, asserted that the circumstances in 2007 rendered this portion of the roadway unreasonably unsafe.  According to the court, § 12-820.03 "[does not] grant the State immunity to properly design a highway in 1967 and then ignore the developments of 40 years in the speed, size, and volume of traffic that might render the highway no longer reasonably safe."  The court therefore denied the motion.

**¶6**     At trial, Glazer's expert witness opined that the State should have installed barriers by 2002 due to the number of cross-median accidents

---

[1]     We review the evidence in the light most favorable to upholding the jury's verdict.  *See Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53 ¶ 13, 961 P.2d 449, 451 (1998).

that likely occurred in the accident area before 2000. He surmised that such accidents occurred because the roadway was "ultra-hazardous" by 2006 due to the increases in traffic volume, truck traffic, and speed limit since 1967 and because ten cross-median accidents occurred from 2003 to 2007 in the eight-mile stretch of I-10 surrounding the accident site. The State countered with evidence that it complied with nationwide standards by monitoring I-10 in one-mile segments, that no cross-median accidents had occurred in the segments immediately surrounding the accident site during the preceding five years, and that the site was not in a high-accident location.

¶7        At the conclusion of Glazer's case-in-chief, the court denied the State's motion for judgment as a matter of law ("JMOL"), which again asserted § 12-820.03's affirmative defense. *See* Ariz. R. Civ. P. 50(a). The jury found in favor of Glazer, awarded $7.8 million in damages, and assigned 100 percent of fault to the State and none to Sumpter or the truck driver. The court denied the State's post-trial motions, including a renewed motion for JMOL asserting the § 12-820.03 defense. *See id.* 50(b).

¶8        The court of appeals affirmed. *Glazer v. State*, 234 Ariz. 305, 314 ¶ 25, 321 P.3d 470, 479 (App. 2014). It held that § 12-820.03 was inapplicable because Glazer's claim did not arise out of a plan or design used in 1967, but instead arose from the State's "fail[ure] to install a median barrier on I-10 given substantial, material changes within a decade (or less) before the 2007 crash." *Id.* at 314 ¶ 25 n.5, 321 P.3d at 479 n.5.

¶9        We granted review because the meaning of § 12-820.03 is a matter of first impression for this Court and of statewide importance. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.  DISCUSSION

### A.

¶10        This Court abolished the doctrine of sovereign immunity for tort liability in 1963, concluding that the government and its employees should generally be responsible for injuries they negligently cause. *Stone v. Ariz. Highway Comm'n*, 93 Ariz. 384, 392, 381 P.2d 107, 112 (1963) ("[T]he rule is liability and immunity is the exception."). But determining when the

government should be immunized from liability proved problematic in ensuing cases, and we invited the legislature to address the issue. *See Ryan v. State*, 134 Ariz. 308, 310, 656 P.2d 597, 599 (1982), *superseded by statute as stated in Clouse ex rel. Clouse v. State*, 199 Ariz. 196, 203 ¶ 27, 16 P.3d 757, 764 (2001).

¶11 The legislature responded in 1984 by enacting the Actions Against Public Entities or Public Employees Act (the "Act"), which specifies circumstances in which governmental entities and public employees are immune from tort liability. 1984 Ariz. Sess. Laws, ch. 285 (2d Reg. Sess.) (codified at A.R.S. §§ 12-820 to -826). The Act leaves intact the common-law rule that the government is liable for its tortious conduct unless immunity applies. *Pritchard v. State*, 163 Ariz. 427, 431, 788 P.2d 1178, 1182 (1990); *see also* 1984 Ariz. Sess. Laws, ch. 285, § 1(A) (declaring as public policy that "public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state").

¶12 We review the interpretation of a statute de novo. *Hoffman v. Chandler*, 231 Ariz. 362, 364 ¶ 8, 295 P.3d 939, 941 (2013). Our primary objective in interpreting § 12-820.03 is to effectuate the legislature's intent. *J.D. v. Hegyi*, 236 Ariz. 39, 40 ¶ 6, 335 P.3d 1118, 1119 (2014). If the statute is subject to only one reasonable interpretation, we apply it without further analysis. *See Backus v. State*, 220 Ariz. 101, 104 ¶ 11, 203 P.3d 499, 502 (2009). If it is ambiguous, however, we consider other factors, including "the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). Because § 12-820.03 bars recovery against public entities if the defense is proven, we construe it narrowly. *Cf. Doe ex rel. Doe v. State*, 200 Ariz. 174, 176 ¶ 4, 24 P.3d 1269, 1271 (2001).

**B.**

**1.**

¶13 The state owes a common-law duty to travelers to keep its roadways reasonably safe for travel. *See Dunham v. Pima County*, 161 Ariz. 304, 306, 778 P.2d 1200, 1202 (1989); *Bach v. State*, 152 Ariz. 145, 147, 730 P.2d 854, 856 (App. 1986). But, despite that overarching obligation, the state may

be relieved from liability for roadway-related injuries under the circumstances set forth in § 12-820.03, titled "Affirmative defense":

> Neither a public entity nor a public employee is liable for an injury arising out of a plan or design for construction or maintenance[2] of or improvement to highways, roads, streets, bridges, or rights-of-way if the plan or design is prepared in conformance with generally accepted engineering or design standards in effect at the time of the preparation of the plan or design, provided, however, that reasonably adequate warning shall be given as to any unreasonably dangerous hazards which would allow the public to take suitable precautions.

Thus, to successfully invoke this defense, the state must prove that (1) the injury alleged arose out of a plan or design for the construction, maintenance, or improvement of a roadway or roadway feature, (2) the plan or design conformed to engineering or design standards generally accepted when the plan or design was prepared, and (3) if any unreasonably dangerous hazards exist, a reasonably adequate warning was given that would have allowed the public to take suitable precautions. *See Hegel v. O'Malley Ins. Co.*, 122 Ariz. 52, 56, 593 P.2d 275, 279 (1979) (noting that the proponent of an affirmative defense has the burden to prove it).

**2.**

¶14        The key issue here is whether injuries from the Glazers' collision were ones "arising out of a plan or design" for the construction of I-10.  We give these terms their usual and commonly understood meanings unless the legislature intended a different meaning. *See Bilke v. State*, 206 Ariz. 462, 464–65 ¶ 11, 80 P.3d 269, 271–72 (2003).

¶15        A "plan" can be a "method of acting, doing, [or] proceeding" or "a design or scheme of arrangement," Random House Webster's Unabridged Dictionary 1479–80 (2d ed. 2001), while a "design" is a

---

2        "Maintenance" means "the establishment or continuation in existence of" roadways and roadway structures "and does not mean or refer to ordinary repair or upkeep."  A.R.S. § 12-820(4).

"combination of details or features" or a plan for "form and structure," *id.* at 539. Injuries "arise" out of a plan or design if they "result or proceed" from either. *See id.* at 113.

¶16        Glazer asserted that the injuries she and her family suffered resulted from the lack of a median barrier, which made the stretch of I-10 near the accident site dangerous in light of the volume, speed, and type of traffic along I-10 in 2007. A median barrier is a roadway safety feature, *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002), and the State's omission of this feature was part of its 1967 design for construction of I-10, *see Wyckoff v. State*, 108 Cal. Rptr. 2d 198, 204 (Ct. App. 2001) ("[W]hat caused the accident—the absence of a median barrier—was part of the design."). No evidence suggests that the construction of the relevant stretch of I-10, including the median, changed since 1967. Just as no barrier existed to prevent cross-median accidents in 2007, no barrier prevented them in 1967. In other words, the highway had the same design in 2007 that it had when built. For these reasons, and based on the wording of § 12-820.03 and the crux of Glazer's negligence claim, we conclude that the Glazers' injuries were ones "arising out of" the State's original construction design for that portion of I-10.

¶17        The dissent contends that "[b]ecause the statute recognizes that injuries may arise from plans for maintenance or improvement as distinct from plans for construction, it is inappropriate to conclude that an injury is one 'arising out of' a plan of construction merely because the injury relates to existing highway conditions." *See infra.* ¶ 40. But the record does not contain evidence that any plan or design for the maintenance of or improvement to the relevant area of I-10 supplanted the original construction design. Indeed, neither the trial court nor the court of appeals addressed "maintenance" or "improvement." On this record, the lack of a median barrier was an inherent feature of the original construction design that persisted to the time of the accident, making our conclusion entirely appropriate.

¶18        The court of appeals reached a different conclusion, reasoning that "Glazer's claim, filings and evidence at trial did not involve a claimed 'injury arising out of a plan or design' for the construction of I-10 in 1967, meaning A.R.S. § 12-820.03 did not apply." *Glazer*, 234 Ariz. at 312 ¶ 19, 321 P.3d at 477. Instead, the court concluded that the Glazers' injuries arose from the State's failure to install a median barrier as required for safe travel

7

due to material changes in the use of I-10 that occurred decades after its 1967 design. *Id.* at ¶¶ 17–19. Relatedly, our dissenting colleague asserts that the Glazers' injuries did not arise out of the original construction design because the omission of a median barrier did not make I-10 unsafe under the conditions as contemplated in 1967. *See infra* ¶ 46. He would not apply the affirmative defense to injuries arising from construction plans when "the highway is being used in substantially different conditions than for which it was designed." *Infra* ¶ 41. In essence, both the court of appeals and the dissent conclude that § 12-820.03 does not apply if a public entity fails to redesign a roadway when material changes make upgrades necessary to keep the roadway reasonably safe for travel, and a claimant suffers injuries as a result. We disagree.

¶19 Nothing in § 12-820.03 precludes its application if injuries occur after material changes to travel over a roadway make the most-recent plan or design substandard. Requiring the public entity to show that its plan or design conformed to accepted standards in effect "at the time of the preparation of the plan or design," suggests that the defense applies to injuries occurring after standards and circumstances have changed. A.R.S. § 12-820.03. Also, requiring warnings for "unreasonably dangerous hazards" contemplates that roadways could become hazardous despite having been designed and built according to plans that originally conformed to safety standards. *Id.*

¶20 The court of appeals' and the dissent's interpretation vitiates much of § 12-820.03's protection as a state-of-the-art defense. Additionally, they fail to demarcate when or what "material changes" or "substantially different conditions" to travel render § 12-820.03 inapplicable, making application of the defense uncertain. Arizona has thousands of miles of state, county, and municipal roadways, and material changes to travel conditions like speed limits and traffic congestion occur over time that may make roadway designs outdated. But public entities have limited resources to bring all roadways into compliance with current design standards and must prioritize needs. *Cf.* Ariz. Dep't of Transp., *Roadway Design Guidelines* § 3.1 (2012) ("Design standards have evolved over a number of years. It is not economically feasible to bring previously constructed highways into conformity with current standards."). If § 12-820.03 does not apply when material changes have occurred to travel over roadways, public entities will be forced to either expend larger shares of their budgets to continuously update roadways and roadway features or risk sweeping liability exposure.

This is precisely the scenario that the legislature intended to protect against by enacting § 12-820.03.

¶21 When it passed the Act, the legislature acknowledged that "unfair and inequitable results" occur when strictly applying sovereign immunity, but recognized that, unlike private entrepreneurs, "the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done." 1984 Ariz. Sess. Laws, ch. 285, § 1(A); *cf. Report of the Governor's Commission on Governmental Tort Liability* 8 (1983) [hereinafter *Commission Report*] (stating that the Act balances the inequity of government immunity with "the need for governmental immunity in limited situations because of the unique role of government and because of competing policy and fiscal considerations").[3] If § 12-820.03's protection vanishes when changes in travel occur over a roadway or roadway feature, public entities would be tasked with doing "everything that might be done" for transportation safety by continuously bringing roadways up to current standards. *Cf. Daniels v. Dep't of Transp.*, 474 S.E.2d 26, 28 (Ga. Ct. App. 1996) (holding that the Georgia Tort Claims Act exempts a public entity from liability for failing to upgrade a highway to meet current design standards because permitting liability "would effectively eliminate the [Act's] protection").

¶22 Glazer argues that her family's injuries arose not from any plan or design but from the State's failure to monitor I-10 for cross-median accidents in compliance with its operational standards. Had the State done so, Glazer contends, it would have identified the collision area as having an unacceptably high number of such accidents and responded by installing a median barrier before the collision in this case occurred.

¶23 But the State's failure to monitor I-10's cross-median accidents, in and of itself, did not injure the Glazers. They suffered injuries from the State's failure to install a median barrier at the collision site. Although Glazer frames her claim as one arising from the State's failure to adhere to operational standards, the core of her claim is that the State failed

---

[3]    The Act is an amended version of legislation proposed in the *Commission Report*. James L. Conlogue, Note, *A Separation of Powers Analysis of the Absolute Immunity of Public Entities*, 28 Ariz. L. Rev. 49, 50–51 (1986) (describing legislative history of the Act).

to redesign the roadway by adding a median barrier in the face of changed standards and circumstances. *Cf. Greenwood v. State*, 217 Ariz. 438, 444–45 ¶ 22, 175 P.3d 687, 693–94 (App. 2008) ("[I]f qualified immunity were inapplicable simply because the form of Plaintiffs' allegations did not mimic the statute, it would encourage plaintiffs to purposely plead their claims to avoid the application of the statute.").

¶24 Both the trial court and the court of appeals expressed a concern, which the dissent echoes, that the interpretation of § 12-820.03 we adopt would permit public entities to ignore unsafe road conditions. *See Glazer*, 234 Ariz. at 314 ¶ 24, 321 P.3d at 479 ("[T]he State could ignore significant changes in traffic volume and speed, vehicle size, accident frequency and similar developments without regard to safety or liability."); *see also infra* ¶ 37. But to successfully assert the § 12-820.03 defense, the State must provide "reasonably adequate warning" of "any unreasonably dangerous hazards" so as to allow travelers to take suitable precautions. A.R.S. § 12-820.03; *cf. Commission Report* at 14 (explaining that the affirmative defense "does not absolve the responsible governmental entity from a duty to exercise reasonable care in warning about hazards, such as a narrow bridge or a dangerous curve, even [though] at the time the highway was designed and built the 'state of the art' was such that the hazard could not have been eliminated").

¶25 The dissent incorrectly asserts that "[our] view effectively replaces the State's duty to keep its highways reasonably safe with a duty to warn the public that highways have become unreasonably dangerous." *See infra* ¶ 45. But it is the statute, not our "view," that qualifiedly displaces common law, and § 12-820.03's affirmative defense applies only if the state can make the required showing. Moreover, the defense does not relieve the state from performing ordinary repair and upkeep on highways as needed to keep the traveling public safe. *See* A.R.S. § 12-820(4). Thus, in addition to providing warnings for unreasonably dangerous hazards, the state must protect the public, in a non-negligent manner, against hazards that fall outside the ambit of § 12-820.03 and against hazards that could be remedied through ordinary upkeep and repair.

¶26 Other factors encourage public entities to address material changes in roadway travel that affect safety. As the State and the governmental Amici point out, public entities are motivated by constituent welfare and federal funding requirements to keep the roadways safe for

travel. *See* 23 U.S.C. § 148(c)(1) (requiring a state to implement a highway safety improvement program to receive federal funding for highways). According to the state traffic engineer, Arizona monitors all roadways and identifies high-accident locations to address safety issues, using a system required by the federal government as a safety-funding condition.

¶27     In sum, § 12-820.03 can apply when material changes to roadway travel render a plan or design for construction, maintenance, or improvement obsolete and the plaintiff's injuries arise from the public entity's failure to upgrade the roadway in response to those changes. We emphasize that § 12-820.03 does not negate a public entity's common-law duty to keep roadways reasonably safe for travel. It simply provides a defense to liability if the public entity proves the statutory elements.

## C.

¶28     The State did not move for a new trial based on § 12-820.03, and it does not ask this Court to remand the case for a new trial. *Cf. In re Estate of Hanscome*, 227 Ariz. 158, 164 ¶ 20, 254 P.3d 397, 403 (App. 2011) ("The court may not . . . grant a new trial to a non-moving party who did not timely request one."). Instead, the State argues that it proved § 12-820.03's affirmative defense and the trial court therefore erred by denying its motions for JMOL.[4] The State was entitled to JMOL if, given the evidence concerning § 12-820.03's requirements, and viewing the evidence in the light most favorable to Glazer as the non-moving party, reasonable people could not find in favor of Glazer. *Cf. Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

¶29     In prior cases, we have reviewed the denial of motions for JMOL for an abuse of discretion. *See, e.g.*, *Gonzales v. City of Phoenix*, 203 Ariz. 152, 153 ¶ 2, 52 P.3d 184, 185 (2002). The standards for granting or denying a motion for JMOL and a motion for summary judgment are the

---

[4]     The State also challenges the trial court's denial of its pretrial motion for summary judgment. The denial of a motion for summary judgment generally is not an appealable order. *See State v. Superior Court*, 140 Ariz. 365, 366, 681 P.2d 1384, 1385 (1984). Regardless, the record does not reflect, and the State does not assert, that the trial court denied the motion for a different reason than it denied the later motions for JMOL, and the State does not assert any arguments unique to the summary judgment ruling.

same. *Orme School*, 166 Ariz. at 309, 802 P.2d at 1008 ("Although the two motions occur at different times during the trial process, they share the underlying theory that there is no issue of fact and that the movant is entitled to judgment as a matter of law."). An appellate court reviews de novo whether summary judgment is appropriate. *See id.* Because the same standard applies for deciding a motion for summary judgment or for JMOL, we now hold that an appellate court should also review de novo the grant or denial of a motion for JMOL.

¶30        As previously explained, the Glazers' injuries arose from the State's design for the construction of I-10. And Glazer concedes that the design was prepared in conformance with accepted engineering or design standards then in effect. Thus, the State established § 12-820.03's first requirement.

¶31        But the State did not establish its compliance with § 12-820.03's warning proviso. The State could satisfy that requirement by showing either that the open median was not an "unreasonably dangerous hazard," thereby obviating the need for warnings, or, if an "unreasonably dangerous hazard" existed, that the State provided adequate warnings to allow travelers to take suitable precautions.

¶32        The State did not prove either alternative as a matter of law. Although evidence supported a finding that the lack of a median barrier did not create an unreasonably dangerous hazard, other evidence permitted the opposite conclusion. Specifically, Glazer elicited expert testimony that the lack of a barrier, coupled with changes to travel since I-10 was originally constructed, made the median in the collision area "dangerous" and "ultra-hazardous," as demonstrated by an unusually high number of cross-median accidents in the area. In light of this evidence, a reasonable person could have found that the open median in the accident area was an "unreasonably dangerous hazard," *cf. Bach*, 152 Ariz. at 146, 730 P.2d at 857 (App. 1986) (holding that an off-road box culvert was an unreasonably dangerous condition), and the State therefore needed to demonstrate that it had given adequate warnings to establish § 12-820.03's defense, *see Edwards v. Bd. of Supervisors*, 224 Ariz. 221, 223 ¶¶ 15–17, 229 P.3d 233, 235 (App. 2010) (finding that county established § 12-820.03's "warning requirement" with uncontroverted evidence of a warning letter). But the record does not show that the State gave any warnings, and the

State does not contend that it would have offered such evidence if the trial court had correctly interpreted § 12-820.03.

¶33        The State nevertheless argues that Glazer waived § 12-820.03's warning requirement by failing to raise it before the jury returned its verdict. But as the proponent of the affirmative defense, the State—not Glazer—was required to prove its compliance with all aspects of § 12-820.03, including the warning requirement, *see Hegel*, 122 Ariz. at 56, 593 P.2d at 279, and it failed to do so.

¶34        The State also contends that it was not required to comply with the warning requirement because "no warning could have allowed the public to take suitable precautions." The State admits, however, it failed to present any evidence to permit the jury to make that determination. Therefore, we need not decide whether § 12-820.03 remains an available defense if an effective warning is not possible.

¶35        Because a reasonable person could find that the unobstructed median was an unreasonably dangerous hazard and no evidence showed that the public had been adequately warned of the condition, the State did not establish, as a matter of law, the affirmative defense prescribed by § 12-820.03. Consequently, although the trial court misinterpreted § 12-820.03, it did not err by denying the State's motions for JMOL.

## II.        CONCLUSION

¶36        We hold that the affirmative defense in A.R.S. § 12-820.03 is available when material changes to travel over roadways or roadway features have rendered the original plans or designs substandard and no other plans have succeeded them. The court of appeals held otherwise, and we therefore vacate paragraphs nine through twenty-five of its opinion. But, although the State proved some elements of the affirmative defense, it did not show, as a matter of law, either that the open median in the collision area was not an "unreasonably dangerous hazard" or, if it was, that the State warned the public of this hazard. Consequently, the trial court did not err by denying the State's motions for JMOL. We therefore affirm the trial court judgment.

Bales, C.J., dissenting in part and concurring in the result.

**¶37** The Glazers have never argued that the 1967 construction plan was deficient for not including median barriers for this particular stretch of the I-10 highway. Instead, they contended, and the jury agreed, that the State breached its long-established duty to keep its highways reasonably safe by not installing barriers, or taking other safety measures, in light of dramatic changes in the highway's usage in the last forty years. Throughout this litigation, the State has asserted that A.R.S. § 12-820.03 allows it to ignore these changes and escape liability for the highway's dangerous condition merely because median barriers were not required in 1967. This interpretation would effectively eliminate the State's duty to keep its highways reasonably safe for travel.

**¶38** I respectfully disagree with the majority's conclusion, ¶¶ 13-27, that § 12-820.03 applies to the Glazers' negligence claim. But I agree that, if the statute does apply, the State was not entitled to prevail as a matter of law. Given the jury's determination that the conditions were unreasonably dangerous in 2007, the State would only have been entitled to the affirmative defense if it had shown that it had provided adequate warnings. *See* ¶ 31. The State never even attempted to make such a showing.

**¶39** Our interpretation of § 12-820.03 should be guided by several background principles. First, we have recognized for more than ninety years that the State has a duty to keep its highways reasonably safe for travel. *See, e.g.*, *Dunham v. Pima County*, 161 Ariz. 304, 306, 778 P.2d 1200, 1202 (1989); *City of Phoenix. v. Clem*, 28 Ariz. 315, 327, 237 P. 168, 172 (1925). As the majority acknowledges, ¶ 13, this duty is not eliminated by § 12-820.03, which provides an affirmative defense only in specified circumstances. We should construe the statute narrowly, *see Doe ex rel. Doe v. State*, 200 Ariz. 174, 176 ¶ 4, 24 P.3d 1269, 1271 (2001), and attempt to give effect to each of its words, such that "no clause, sentence or word is rendered superfluous, void, contradictory or insignificant." *Bilke v. State*, 206 Ariz. 462, 464 ¶ 11, 80 P.3d 269, 271 (2003).

**¶40** Section 12-820.03 applies to "an injury arising out of a plan or design for construction or maintenance of or improvement to" a highway "if the plan or design is prepared in conformance with generally accepted engineering or design standards in effect at the time of the preparation of

14

the plan or design." "Maintenance" means "the establishment or continuation in existence of" a highway, but "does not mean or refer to ordinary repair or upkeep." A.R.S. § 12-820(4). Because the statute recognizes that injuries may arise from plans for maintenance or improvement as distinct from plans for construction, it is inappropriate to conclude that an injury is one "arising out of" a plan of construction merely because the injury relates to existing highway conditions.

¶41        I would hold that an injury arises out of a plan for construction only if the dangerous condition causing the injury is inherent in the plan itself. If the 1967 design had contemplated the current conditions (particularly traffic speed and volume) and had, consistent with 1967 standards, omitted median barriers, I would agree that § 12-820.03 might apply. A "plan or design for construction" necessarily makes certain assumptions about a highway's usage. If a design was "state of the art" when prepared for *those* conditions, the State should be able to use the defense if design standards later change. But a "state of the art" defense should not apply when the highway is being used in substantially different conditions than for which it was designed. (When conditions have changed, the State might seek to invoke the affirmative defense by arguing that its plans for the highway's maintenance or improvement conform to generally accepted standards; the State made no such argument here.)

¶42        The evidence, when viewed in favor of sustaining the jury's verdict, showed that the injuries to the Glazers did not result from any dangerous condition inherent in the 1967 design. If the highway had continued in existence under conditions contemplated when it was designed and constructed, the particular segment would not have been dangerously unsafe even though median barriers were lacking. Conditions, however, changed in ways that were not contemplated by the 1967 plan. Traffic volume increased to about 55,000 vehicles daily, more than three times the number the plan had projected for 1997. Speed limits were raised to 75 miles per hour. The risks posed by these changes are greater because on this particular stretch of highway, the median is hard-pack and, unlike soft sand or rocks, is easily traversable. An out-of-control vehicle can cross the median in seconds, leaving no time for a driver traveling the opposite way to take evasive action.

¶43        This combination of circumstances – not any defect inherent in the 1967 construction plan – has resulted in crossover accidents occurring on

this stretch of highway at a rate some twenty-nine times higher than the statewide average. The Glazers presented evidence that if the State had followed its own guidelines, it would have monitored the incidence of cross-over accidents (ten occurred, resulting in six deaths, between 2003 and 2007). If the State had done so, reasonable engineering standards would have required installation of median barriers by 2000 or 2001. Had such barriers been in place when the driver in this case lost control in heavy traffic, the vehicle would not have shot across the median and crashed into the Glazers' northbound vehicle, killing two people and injuring another. The State, however, made no significant changes to this portion of the highway over forty years.

¶44        Having heard this evidence, the jury was instructed, without objection, that:

> The State has a duty to keep its highways reasonably safe for travel. That duty includes the duty to place proper barriers, railings, guards, and/or warning signs at dangerous places on a highway when necessary for travelers' safety.

> The mere fact that an accident occurred does not compel the conclusion that a condition was unreasonably dangerous.

The jury found that the State had breached its duty by allowing an unreasonably dangerous condition to exist and that its negligence caused injury to the Glazers. The State has not challenged these findings on appeal.

¶45        The majority, unfortunately, accepts the State's argument that A.R.S. § 12-820.03 generally applies "even if material changes to travel have rendered the roadway substandard," ¶ 1, and that the statute applies to the Glazers' claim because median barriers were not included in the 1967 plan. ¶ 16. The majority's holding allows the State to assert the statutory defense merely because the original plan for construction was silent about improvements that might be needed to ensure safe travel under current – and substantially different - conditions. That the 1967 plan omitted median barriers is not a sufficient reason, in my view, to conclude that the Glazers' 2007 injuries were ones "arising out of" that plan. The majority's contrary view effectively replaces the State's duty to keep its highways reasonably

safe with a duty to warn the public that highways have become unreasonably dangerous.

**¶46**      Section 12-820.03 does not apply here because the 2007 injuries did not result from any defect inherent in the 1967 construction plan, but instead from the dramatically changed conditions on the I-10 highway.  But if the injuries were ones "arising out of" the 1967 plan, the State was not entitled to judgment as a matter of law because the conditions were unreasonably dangerous and the State did not provide reasonably adequate warnings.  These conclusions comport with the jury's findings, the language of A.R.S. § 12-820.03, and our ninety-year recognition of the State's duty to keep its highways reasonably safe for travel.  I concur in affirming the trial court's judgment.