NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CARLOS OCHOA, et al., *Plaintiffs/Appellants*,

*v.*

STATE OF ARIZONA, *Defendant/Appellee*.

No. 1 CA-CV 22-0713
FILED 10-31-2023

Appeal from the Superior Court in Maricopa County
No. CV2017-011933
The Honorable Michael W. Kemp, Judge
The Honorable Katherine Cooper, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Counsel for Plaintiffs/Appellants*

Ortega Law Firm, P.C., Phoenix
By Daniel R. Ortega, Jr.
*Counsel for Plaintiffs/Appellants*

Lewis and Lewis, Trial Lawyers, PLC, Scottsdale
By Robert K. Lewis, Amy M. Lewis
*Counsel for Plaintiffs/Appellants*

Arizona Attorney General's Office, Phoenix
By Christopher B. Davis, Rebecca A. Banes
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Andrew M. Jacobs and Chief Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1　　　　After the death of their son, Carlos Ochoa and Taydee Ibarra ("Plaintiffs") filed this wrongful death action against the State of Arizona for breaching its duty to maintain safe roadways. Plaintiffs appeal the superior court's bifurcation of their trial, and the denial of their motion for judgment as a matter of law and motion for new trial following the jury's verdict in favor of the State on its immunity defense. For the following reasons, we affirm.

**BACKGROUND**

¶2　　　　In 2013, the Arizona Department of Transportation ("ADOT") finished construction of Fain Road (also called State Route 89A Spur), a four-lane, controlled-access highway in Yavapai County. The highway included a median separating the directions of travel. As the highway was being built, construction crews created berms, or temporary crossovers, spanning the median to facilitate their work. After completion, several of those crossovers remained. ADOT maintenance crews and the Department of Public Safety ("DPS") employees noticed the general public had been using those crossovers, and DPS asked ADOT to install emergency crossovers, which are intended for use by emergency and maintenance vehicles only, on Fain Road.

¶3　　　　ADOT then established two emergency crossovers, which were completed by September 2013. ADOT did not install any signs instructing motorists that the crossovers were reserved for emergency vehicles or not usable for U-turns, opting to wait and see if such signs were necessary. For three years after it created the emergency crossovers, ADOT received no reports or indications that motorists were using the emergency crossover at issue here improperly.

**¶4** On the night of August 24, 2016, Jeri Scott mistakenly turned onto Fain Road. Unsure of her whereabouts, she was looking for an emergency crossover to get her bearings and locate a mile marker. She slowed in the left-hand lane to access the crossover and was rear-ended by a car driven by Plaintiffs' son. He suffered fatal injuries from the collision.

**¶5** Plaintiffs sued the State in 2017 on counts of negligence and gross negligence, claiming the State failed to (1) properly design or construct the highway, and (2) provide reasonably adequate warnings and signage of the crossover. The State answered by raising several affirmative defenses, including immunity under A.R.S. § 12-820.03, which states:

> A public entity or a public employee is not liable for an injury arising out of a plan or design for construction or maintenance of or improvement to transportation facilities, including highways . . . if the plan or design is prepared in conformance with generally accepted engineering or design standards in effect at the time of the preparation of the plan or design and the public entity or public employee gives to the public a reasonably adequate warning of any unreasonably dangerous condition.[1]

**¶6** After unsuccessfully seeking summary judgment, the State moved to bifurcate the trial under A.R.S. § 12-820.03(B), which requires the superior court to hold a separate trial to assess liability if there is "a genuine issue of material fact" as to whether the State can claim the affirmative defense in § 12-820.03(A). Plaintiffs opposed the motion, arguing subsection B violates the separation of powers doctrine of the Arizona Constitution by conflicting with Arizona Rule of Civil Procedure ("Rule") 42(b). The superior court granted the State's motion, finding that applying the statute did not require the court "to follow a procedure inconsistent with [Rule 42]." Though the State did not request a separate trial under Rule 42, the court also found that bifurcation was warranted under Rule 42 alone, because the State would suffer prejudice. The matter proceeded to a jury trial solely on whether the State met the elements required for the § 12-820.03(A) defense.

---

[1] The current version of § 12-820.03(A) differs slightly from the version in effect at the time of the collision. However, because the changes do not materially change the requirements of the affirmative defense, we cite the current version of the statute.

¶7        At trial, the State presented testimony from John Litteer, a regional traffic engineer from ADOT. Litteer discussed the history of the Fain Road construction, noting he approved DPS' request for the installation of the emergency crossover at issue. Litteer also testified that the Arizona Roadway Design Guidelines ("Guidelines"), created by ADOT using input from engineers, included design criteria for emergency crossovers, and that ADOT's maintenance crews followed that process in establishing this crossover. As to the lack of signage, Litteer described ADOT's general practice of "incremental change" to see if any signs would be necessary for the crossover, and because he never received reports after the construction of the crossover that motorists were improperly using it, ADOT never saw a need to provide signage for the crossover. Litteer also testified that signing would draw motorists' attention to the crossover, which ADOT wanted to avoid.

¶8        The State also presented testimony from Andrew Smigielski, a traffic engineer, and Thomas Brannon, another professional engineer and expert in traffic and roadway maintenance. Smigielski explained the requirements of the Manual on Uniform Traffic Control Devices ("MUTCD") regarding signage and concluded that the emergency crossover did not require a sign instructing drivers not to use it. Brannon's testimony revisited the Guidelines, including their specific criteria for emergency crossovers, and he opined that the crossover in this case met the Guidelines' standards. After the State rested, Plaintiffs unsuccessfully moved for judgment as a matter of law under Rule 50.

¶9        Plaintiffs presented testimony from Tony Voyles, a civil engineer. Voyles believed the crossover created conflict points by giving drivers the option to cross the median regardless of ADOT's intent. He opined that the crossover required formal engineering review that was never conducted, and that the MUTCD required posting regulatory signage. Plaintiffs played portions of a deposition by Lev Derzhavets, a professional engineer specializing in road design, who concluded that the crossover or "turnaround" lacked the detail or planning standard for such features, and that the crossover did not meet ADOT's own standards. Plaintiffs' counsel also read a deposition of Michael Kunzel, an accident reconstructionist, who discussed the potential danger presented by drivers turning left from a highway.

¶10        Answering three special interrogatories related to the § 12-820.03(A) defense, the jury found: (1) there was a plan or design for the construction of the emergency crossover; (2) the plan or design conformed to generally accepted engineering or design standards; and (3) the

4

crossover did not present an unreasonably dangerous hazard. Plaintiffs renewed their motion for judgment as a matter of law, asserting the State failed to prove any of the § 12-280.03(A) requirements. Alternatively, Plaintiffs sought a new trial on several grounds, including that the jury's verdict was against the weight of the evidence. The superior court denied both motions, and Plaintiffs timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶11 Plaintiffs argue (1) the superior court's bifurcation of the trial was made under an unconstitutional statute, (2) the State was not entitled to immunity as a matter of law, and (3) the jury verdict was against the weight of the evidence.

### A. Bifurcation

¶12 Plaintiffs contend the mandatory bifurcation provision in § 12-820.03(B) unconstitutionally encroaches on our supreme court's procedural rulemaking authority under Article 6, Section 5 of the Arizona constitution, and the superior court's bifurcation here was erroneous. We review a court's decision to bifurcate a trial under Rule 42(b) for an abuse of discretion, *Morley v. Superior Court.*, 131 Ariz. 85, 87 (1981), and we will affirm the court's decision if correct for any reason, *City of Phoenix v. Geyler*, 144 Ariz. 323, 330 (1985). We generally prefer to resolve cases without reaching constitutional issues. *In re U.S. Currency in the Amount of $315,900.00*, 183 Ariz. 208, 211 (App. 1995).

¶13 We need not address whether A.R.S. § 12-820.03(B) is unconstitutional because the superior court relied on Rule 42 as providing alternative grounds for bifurcation. Rule 42(b) permits trial judges to order separate trials of one or more issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Here, the court explicitly found that a separate trial on the applicability of § 12-820.03(A) was necessary, as the "State would suffer prejudice" absent bifurcation. Plaintiffs do not contest the superior court's finding of prejudice. Instead, they argue the court's ruling under Rule 42 was nothing more than "impermissible speculation" because § 12-820.03(B) required bifurcation regardless of the court's decision under Rule 42. We disagree.

¶14 The superior court did not speculate as to nonexistent circumstances in deciding whether the State would suffer prejudice; it considered the facts and circumstances of the case. Indeed, by finding prejudice, the superior court performed the exercise Rule 42 deems

necessary in deciding whether to bifurcate. Plaintiffs refer to the bifurcation as a "liability-ending gift," but they do not explain how their case was prejudiced by the court's bifurcation ruling. And though the State sought bifurcation only under § 12-820.03(B), we cannot say the court's determination that bifurcation was justified under Rule 42(b) is an abuse of discretion. *See Geyler*, 144 Ariz. at 330 (recognizing an appellate court's obligation "to affirm where any reasonable view of the facts and law" supports the superior court's ruling). At bottom, if the statute were unconstitutional, as plaintiffs suggest, and the procedural rule stood in its place, the superior court's decision founded on Rule 42 would be valid. Absent any suggestion in the record that the superior court did not regard its finding of prejudice as correct, we cannot treat that ruling as illusory.

## B. Judgment as a Matter of Law

¶15 Plaintiffs argue the superior court erred in denying their renewed motion for judgment as a matter of law. A judge should grant such a motion if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find in the non-moving party's favor. Ariz. R. Civ. P. 50(a)(1). Judgment under Rule 50 is appropriate when "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Warne Invs., Ltd. v. Higgins*, 219 Ariz. 186, 194, ¶ 33 (App. 2008). We review the denial of a Rule 50 motion de novo, *Glazer v. State*, 237 Ariz. 160, 167, ¶ 29 (2015), viewing the evidence and all reasonable inferences in favor of the non-moving party, *Dawson v. Withycombe*, 216 Ariz. 84, 95, ¶ 25 (App. 2007).

¶16 Under § 12-820.03(A), the State must prove three elements: (1) the injury arose from a plan or design for a roadway feature; (2) that plan or design conformed with generally accepted engineering principles contemporaneous with preparation of the plan or design; and (3) if there is an unreasonably dangerous hazard, the state provided a "reasonably adequate warning." *Glazer*, 237 Ariz. at 164, ¶ 13. Plaintiffs argue the State failed to prove any of these three elements.

### 1. Plan or Design

¶17 Asserting that the State "never planned or designed the median crossover," and that the place where the fatal collision occurred was merely a "leftover median crossover area," Plaintiffs contend there was never a plan or design from which the injuries to their son could have

arisen. They point to testimony presented by their experts and the State's ADOT witness, who acknowledged the emergency crossover lacked the standard engineering detail seen in typical crossovers, and that the crossover here was created over the top of the "makeshift" crossover left in place when the highway was constructed.

**¶18**      In *Glazer*, 237 Ariz. at 164, ¶ 15, our supreme court explained that "[a] 'plan' can be a 'method of acting, doing, or proceeding' or 'a design or scheme of arrangement.'"  A design, on the other hand, is a "combination of details or features or a plan for form and structure."  *Id.* (cleaned up). We apply those definitions here.

**¶19**      The evidence presented at trial contradicts Plaintiffs' assertion that the emergency crossover was nothing more than a "leftover" from previous construction.  Though the State created the emergency crossover at issue on top of one of the original crossovers built during construction, the State sent maintenance crews to top that area with recycled asphalt millings.  The ADOT witness testified he personally approved DPS' request for emergency crossovers and instructed maintenance personnel to coordinate with DPS.  The State introduced a report showing an ADOT maintenance supervisor approved the labor and materials used to construct the crossover.  The same witness also indicated maintenance crews built it in conformance with the design criteria in the Guidelines, and it was constructed under ADOT's standard pattern of conduct for building emergency crossovers.  Thus, reasonable jurors could infer that the State had a method for creating emergency crossovers and followed that method for the crossover at issue.

**¶20**      Though the State never introduced formal schematics or drawn plans for the crossover, we do not read the broad definitions of "plan" or "design" analyzed in *Glazer* to require that level of detail.  Instead, the State only needed to prove that it had a "method of acting, doing, or proceeding" or that the emergency crossover was made pursuant to some "combination of details or features."  *Id.*

**¶21**      Plaintiffs also assert the State failed to prove there was a specific plan for not placing a warning or regulatory sign at the emergency crossover.  However, the State's ADOT witness explained that the department had a general practice of "incremental change," and would observe the roadway feature to see if a sign was necessary.  And because ADOT never received information that the crossover was being improperly used, it did not determine that any sign discouraging its use was necessary.  Though there was no evidence the State separately considered whether this

emergency crossover required a specific sign, nothing in § 12-820.03(A), as construed in *Glazer*, imposes such a requirement. The testimony presented showed the State had a regular method of acting to decide whether to add signage, and it followed that method in this case.

## 2. Generally Accepted Engineering Standards

**¶22** Plaintiffs argue the State could not meet the second element of the § 12-820.03(A) defense, which requires that any plan or design must conform "to engineering or design standards generally accepted when the plan or design was prepared." *Glazer*, 237 Ariz. at 164, ¶ 13. Plaintiffs reiterate that since there was no "plan or design," the crossover could not meet any contemporaneous design standards. But assuming there was a plan or design, Plaintiffs point to their engineering expert (Voyles), who opined that the State's failure to have the crossover reviewed by an engineer was contrary to generally accepted engineering practices. Because Voyles agreed that this crossover "affect[ed] the operational movement of the roadway" by adding a crossover which drivers could enter, he concluded that generally accepted engineering principles required some form of engineering review. In his view, the plan to add the crossover required an "appropriate plan sheet" to document the change.

**¶23** Plaintiffs, however, overlook the conflicting testimony presented at trial. Brannon testified that the Guidelines were "the gold standard" for transportation-related maintenance engineers and crews, and that the Guidelines were among the types of resources generally relied upon in the industry. Along with Litteer, Brannon also testified about § 405.1 of the Guidelines, which applies specifically to emergency crossovers. As Brannon noted, the Guidelines require only three criteria for emergency crossovers: (1) that they are unpaved; (2) acceleration and deceleration lanes are not required; and (3) they must not be located within half a mile of an exit or entrance ramp. The emergency crossover met these requirements.

**¶24** The right to assess the credibility of witnesses and weigh evidence belongs to the jury, and in reviewing the denial of a renewed judgment as a matter of law, it is not our place to reweigh that testimony. *Dupray v. JAI Dining Servs. (Phoenix), Inc.*, 245 Ariz. 578, 582, ¶ 11 (App. 2018). The State presented evidence, through expert testimony, that the crossover met criteria required by generally accepted engineering standards.

### 3. Unreasonable Hazards

**¶25** Concerning the final element of the roadway immunity defense, Plaintiffs argue the evidence at trial established that the emergency crossover was an unreasonably dangerous hazard. Plaintiffs' argument is supported by their witnesses' opinions regarding the danger the crossover presented. But that argument fails to account for the State's evidence to the contrary. The ADOT witness testified he had not received reports of motorists using the emergency crossover after ADOT built it, and the crossover did not run the risk of creating additional conflict points with traffic because it was not something the traveling public should have, or was known to, use. Though Plaintiffs' witnesses disagreed with that assessment, Plaintiffs have not shown how a jury would be unable to reasonably believe the State's witnesses. The court therefore properly denied the motion for judgement as a matter of law. *See Glazer*, 237 Ariz. at 167, ¶ 32 ("Although evidence supported a finding that the lack of a median barrier did not create an unreasonably dangerous hazard, other evidence permitted the opposite conclusion.").[2]

### C. Motion for New Trial

**¶26** Plaintiffs moved for a new trial on several grounds, including that the evidence did not support the jury's answers to the special interrogatories. On appeal, the only ground raised is the sufficiency of that evidence. We will reverse the denial of a motion for new trial on the grounds that the verdict is against the weight of the evidence only if the verdict "reflects a manifest abuse of discretion given the record." *Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996). We will affirm "if any substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support the verdict." *Id.* For the reasons discussed above, we conclude the State provided sufficient evidence for the jury to reach the conclusion

---

[2] The State also elicited testimony at trial that the solid yellow line separating the highway from the crossover was a "reasonably adequate warning" to motorists that they should not use the crossover. The superior court found that evidence was sufficient to meet the State's burden of proving the affirmative defense. But evidence of a reasonably adequate warning is only necessary if, as a matter of law, the jury could not have reasonably concluded that the emergency crossover was not an unreasonably dangerous hazard. Because we conclude the State provided sufficient evidence that there was no unreasonably dangerous hazard requiring a warning, we need not rely on evidence regarding the yellow line.

that the State was immune from liability under § 12-820.03(A). The superior court did not abuse its discretion in denying Plaintiffs' motion for a new trial.

## CONCLUSION

¶27     We affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED:   AA