IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BONNIE PENDERGAST, *Plaintiff/Appellee*,

*v.*

ARIZONA STATE RETIREMENT SYSTEM, an agency of the State of
Arizona, *Defendant/Appellant*.

No. 1 CA-CV 13-0244
FILED 5-1-2014

Appeal from the Superior Court in Maricopa County
No. LC2012-000596
The Honorable Crane McClennen, Judge

**AFFIRMED**

COUNSEL

Snell & Wilmer, LLP, Phoenix
By Joshua Grabel, Adam E. Lang, and Martha E. Gibbs
*Counsel for Plaintiff/Appellee*

Arizona Attorney General's Office, Phoenix
By Jothi Beljan
*Counsel for Defendant/Appellant*

**OPINION**

Judge Lawrence F. Winthrop delivered the opinion of the Court, in which
Presiding Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

**W I N T H R O P,** Judge:

**¶1**         The Arizona State Retirement System ("ASRS") appeals the decision of the superior court finding the 2011 legislative amendment to the public service credit purchase program violated ASRS member Bonnie Pendergast's constitutional rights.  We affirm because the public service credit purchase program was a public retirement system benefit when the voters passed Article 29, Section 1(C) of the Arizona Constitution, Pendergast's eligibility under the program is therefore constitutionally protected from diminishment, and the 2011 legislative amendment unconstitutionally diminishes her vested rights to public retirement system benefits under the program.

## FACTS AND PROCEDURAL HISTORY

I.      *The Parties*

**¶2**         ASRS is a defined benefit retirement plan for public employees.  *See* Arizona Revised Statutes ("A.R.S.") section 38-712 (West 2014).[1]  Members of the plan include employees of the State of Arizona and participating Arizona political subdivisions.  A.R.S. § 38-711(13); A.R.S. § 38-727(A).  A member qualifies for monthly pension benefits through ASRS upon reaching a combination of age and years of credited service.  *See* A.R.S. § 38-711(27)(a).  For a member who joined ASRS prior to July 1, 2011, "normal retirement" may begin upon (a) a member's sixty-fifth birthday, (b) a member's sixty-second birthday and completion of at least ten years of credited service, or (c) the first day that the sum of a member's age and years of credited service reaches the number eighty.  A.R.S. § 38-711(27)(a).

**¶3**         Bonnie Pendergast became a member of ASRS in 1984 when she began teaching in the Mesa Public School System.  In 1996, Pendergast moved to Minnesota where she taught until 2006, when she returned to Arizona and resumed teaching here.  She has remained a member of ASRS from 1984 until the present.

---

[1]      We cite the current Westlaw version of the applicable statutes and constitutional provisions because no revisions material to this decision have since occurred.

II.     *The Public Service Credit Purchase Program*

**¶4**     The public service credit purchase program ("the Program") is codified at A.R.S. § 38-743.  Established in 1987, the Program initially applied to teachers and school administrators who had been teachers or school administrators in another state.  *See* 1987 Ariz. Sess. Laws, ch. 182, § 1 (1st Reg. Sess.).  Under the Program, qualifying ASRS members could purchase up to five years of credited service earned through previous out-of-state employment by paying the actuarial present value of such benefits.  1987 Ariz. Sess. Laws ch. 182, § 1 (1st Reg. Sess.).  By purchasing such credited service, active members could accelerate their ability to retire with full benefits.[2]

**¶5**     Over the next decade, the legislature expanded the Program.  Relevant to this appeal, in 1996 the legislature removed the maximum credited service purchase limit of five years, allowing active members to purchase an unlimited number of credits corresponding to their out-of-state service, and changed the purchase cost from the actuarial present value of the benefits to the present normal cost.  1996 Ariz. Sess. Laws, ch. 185, § 9 (2d Reg. Sess.).

**¶6**     In 2004, the legislature returned the purchase price of credited service to the actuarial present value.  2004 Ariz. Sess. Laws, ch. 252, § 1 (2d Reg. Sess.).  Five years later, the legislature limited the Program by requiring members to earn at least five years of credited service in ASRS before being eligible to participate in the Program.  2009 Ariz. Sess. Laws, ch. 36, § 5 (1st Reg. Sess.).  Recently, and most relevant to this appeal, the legislature reinstated the five year limit on the amount of out-of-state service eligible for purchase under the Program.  *See* 2011 Ariz. Sess. Laws, ch. 357, § 5 (1st Reg. Sess.).

---

[2]     "Credited service" is defined as "the number of years standing to the [ASRS] member's credit on the books of ASRS during which the member made the required contributions," A.R.S. § 38-711(9), and is used to calculate the ASRS member's retirement benefits, *see* A.R.S. § 38-757 (normal retirement); A.R.S. § 38-758 (early retirement); A.R.S. § 38-759 (late retirement); A.R.S. § 38-768 (minimum retirement benefit).

¶7          In its present form, the legislation enabling the Program provides:

> A.  If an active member of ASRS or a member who is receiving benefits pursuant to § 38-797.07 was previously employed by the United States government, a state, territory, commonwealth, overseas possession or insular area of the United States or a political subdivision of a state, territory, commonwealth, overseas possession or insular area of the United States, excluding any time worked for a prison while the member was incarcerated, the member may receive up to sixty months of credited service for this prior employment if the member pays into ASRS the amount prescribed in subsection B of this section.
>
> B.  A member who elects to receive credit for service with the United States government, a state, territory, commonwealth, overseas possession or insular area of the United States or a political subdivision of a state, territory, commonwealth, overseas possession or insular area of the United States shall pay to ASRS an amount equal to the present value of the additional benefit that is derived from the purchased credited service using the actuarial assumptions that are approved by the board.
>
> C.  A member who previously was a member of another public employee retirement system and who receives or is eligible to receive retirement benefits from that system for any period of employment is ineligible to receive retirement benefits from ASRS for the same period.
>
> D.  A member shall have at least five years of credited service in ASRS before electing to receive credit for service pursuant to this section.

A.R.S. § 38-743.

¶8          From an ASRS member's perspective, the advantages of purchasing credited service through the Program are two-fold.  First, purchasing credited service enables a member to reduce the length of time the member must work as an employee of the State before satisfying the so-called Rule of 80 and retiring  with full retirement benefits.  *See* A.R.S. § 38-711 (defining "normal retirement date"); A.R.S. § 38-757(B) (explaining calculation of "monthly life annuity" at "normal retirement").

Second, purchasing credited service through the Program allows an ASRS member to consolidate retirement benefits from previous government employment into one account with ASRS.

### III.   *Procedural History*

**¶9**        In March 2012, Pendergast contacted ASRS to purchase 9.89 years of credited service related to her public employment in Minnesota. ASRS responded that she could only purchase up to five years of credited service through the Program under the current version of A.R.S. § 38-743. Later that month, Pendergast appealed the decision with ASRS, but ASRS denied her appeal.   After exhausting her administrative remedies, Pendergast filed a complaint for judicial review in superior court.  After briefing and oral argument, the superior court found ASRS's decision to apply A.R.S. § 38-743 as amended to Pendergast violated Pendergast's constitutional rights pursuant to the Arizona Constitution, Article 29, Section 1.  ASRS has appealed that determination.  We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9 and A.R.S. § 12-2101(A)(1).

## ANALYSIS

**¶10**        Reviewing an administrative appeal, a superior court "may affirm, reverse, modify or vacate  and remand the agency action."   A.R.S. § 12-910(E).   "On  appeal,  we  review  de  novo  the  superior  court's judgment, reaching the same underlying issue as the superior court: whether the administrative action was not supported by substantial evidence or was illegal, arbitrary and capricious, or involved an abuse of discretion."  *Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430, ¶ 13, 153 P.3d 1055, 1059 (App. 2007).

### I.   Yeazell *and Article 29, Section 1(C) of the Arizona Constitution*

**¶11**        Beginning with *Yeazell v. Copins*, 98 Ariz. 109, 402 P.2d 541 (1965), Arizona courts have recognized a "contract theory of retirement benefits."  *Norton v. Ariz. Dep't of Pub. Safety Local Ret. Bd.*, 150 Ariz. 303, 306, 723 P.2d 652, 655 (1986).

> Under that theory, the State's promise to pay retirement benefits is part of its contract with the employee; by accepting the job and continuing work, the employee has accepted the State's offer of retirement benefits, and the State may not impair or abrogate that contract without offering consideration and obtaining the consent of the employee.

*Proksa v. Ariz. State Sch. for the Deaf & the Blind*, 205 Ariz. 627, 630, ¶ 16, 74 P.3d 939, 942 (2003) (citations omitted); *see also Yeazell*, 98 Ariz. at 115, 402 P.2d at 545 ("[T]he right to a pension becomes vested upon acceptance of employment."). Interpreting *Yeazell*, our supreme court has held "when [an] amendment [to the contract] is beneficial to the employee . . . , it automatically becomes part of the contract by reason of the presumption of acceptance." *Thurston v. Judges' Ret. Plan*, 179 Ariz. 49, 51, 876 P.2d 545, 547 (1994).

¶12 In 1998, Arizona voters elevated the protections recognized in *Yeazell* to the level of constitutional command with the passage of Proposition 100. Today enshrined as Article 29, Section 1(C) of the Arizona Constitution, that provision states: "Membership in a public retirement system is a contractual relationship that is subject to article II, § 25, and public retirement system benefits shall not be diminished or impaired." Under Article 29, Section 1(C), "The Contract Clause applies to the general contract provisions of a public retirement plan, while the Pension Clause applies only to public retirement benefits. Therefore, the Pension Clause confers *additional, independent protection* for public retirement benefits separate and distinct from the protection afforded by the Contract Clause." *Fields v. Elected Officials' Ret. Plan*, CV-13-0005-T-AP, slip op. at ¶ 17, 2014 WL 644467, at *4 (Ariz. Feb. 20, 2014) (emphasis added).

¶13 Given the additional protection afforded public retirement system benefits, we first determine whether purchasing credited service through the Program qualifies as a public retirement system benefit under the Pension Clause. If purchasing credited service through the Program qualifies as such a benefit, then we must determine whether the 2011 legislative amendment to the Program unconstitutionally diminishes or impairs Pendergast's vested benefit.

### A. Pension Clause Analysis

¶14 To determine whether purchasing credited service through the Program is a public retirement system benefit protected by Article 29, Section 1(C), we will not utilize the parties' equally plausible dictionary definitions of "benefit." *See Fields*, CV-13-0005-T-AP, slip op. at ¶ 21, 2014 WL 644467, at *4 ("We think the dictionary definitions do not determine the meaning of 'benefit' as used in the Pension Clause."). Nor will we rely on our pre-Article 29 case law for guidance on this definition. *See id.* at ¶ 19 ("Neither the Arizona Constitution nor Arizona case law defines 'benefit.'"). Instead, to determine whether "benefit" encompasses the

ability to purchase credited service through the Program, we look to the history of the Pension Clause and the statutory scheme in existence when the voters passed Proposition 100. *See id.* at ¶ 21-24.

1. *"Public Retirement System Benefit"*

**¶15**        The eleven-year history of the Program prior to the 1998 passage of Proposition 100 confirms that the ability to purchase credited service through the Program is a public retirement system benefit. The legislature initially established the Program in 1987 for teachers and school administrators. 1987 Ariz. Sess. Laws, ch. 182, § 1 (1st Reg. Sess.).[3] In 1994, a legislative amendment to A.R.S. § 38-743 extended eligibility for the Program to professors and instructors at public universities and community colleges. *See* 1994 Ariz. Sess. Laws, ch. 356, § 18 (2d Reg. Sess.).[4] In 1996, the legislature further expanded the scope of the program

---

[3]        Pursuant to the original program,

A.  At the time of retirement a teacher or administrator of a school district who is an active member of the plan or system and who previously was a member of a public employee retirement system in another state while employed as a teacher or school administrator and is not receiving retirement benefits as a result of that employment may receive up to five years of service credit for this prior employment if the teacher or administrator pays into the system the amount prescribed in subsection B.

B.  A teacher or administrator electing to receive credit for service outside this state shall pay to the system the amount equal to the increase in the actuarial present value of benefits computed at the time of retirement which results from adding the number of years or partial years of credited service received under subsection A.

1987 Ariz. Sess. Laws, ch. 182, § 1 (1st Reg. Sess.).

[4]        The 1994 legislation did not affect the five-year cap on prior public service credit eligible for purchase or the payment at retirement based on actuarial present value. In 1995, amendments to A.R.S. § 38-743 removed the requirement that a member's payment into the program be computed at the time of retirement and added subsection C to clarify that members

by (a) opening the program to all active ASRS members, (b) predicating payment for the credited service on normal cost rate rather than actuarial present value, and (c) removing the five-year cap on prior public service eligible for purchase.  *See* 1996 Ariz. Sess. Laws, ch. 185, § 9 (2d Reg. Sess.). With this statutory scheme in place, the voters approved Proposition 100 in 1998.

**¶16**        One aspect of this statutory scheme, however, appears to suggest that the Program is not included among the public retirement system benefits protected by the Pension Clause; the legislature's use of "may" in A.R.S. § 38-743(A) could indicate the legislature intended to reserve for itself the power to modify the Program.  *See* A.R.S. § 38-743(A) (1996) (ASRS member "*may* receive up to five years of service credit for . . . prior employment" if the member pays ASRS the normal cost rate of the retirement benefits (emphasis added)).[5]   "May" is not defined in the statute.  "When a word or phrase in a statute is undefined, we must give

participating in the program could not also receive retirement benefits from the out-of-state retirement system for the same years.  *See* 1995 Ariz. Legis. Serv., ch. 134, § 5 (1st Reg. Sess.).

[5]      Although not directly raised on appeal by ASRS, the sunset clause attached to the entire Arizona State Retirement System also suggests the legislature has retained the power to modify or even eliminate the Program as a part of the retirement system.  *See* A.R.S. § 41-3016.19. Although the absence of a sunset clause can indicate that the statute is among the public retirement system benefits protected by Article 29, Section 1(C), *see Fields*, CV-13-0005-T-AP, slip op. at ¶ 23, 2014 WL 644467, at *5, we would disagree with any argument that the presence of a sunset clause necessarily precludes constitutional protection of a part of the retirement system.  Nothing in the history of the Pension Clause suggests it should be so limited.  *Cf. id.* at ¶ 28 ("[U]nlike narrower protections found in other states' constitutions, the protection afforded by the Arizona Pension Clause extends broadly and unqualifiedly to 'public retirement system benefits,' not merely benefits that have 'accrued' or been 'earned' or 'paid.'" (citations omitted)).  Without deciding the effect of the sunset clause on the other provisions of Title 38, Chapter 5, Article 2, we conclude the existence of a sunset clause does not undermine our conclusion that the constitutional guarantee of the Pension Clause protects an ASRS member's ability to purchase credited service through the Program.

the words their ordinary meanings . . . ." *Loftus v. Ariz. State Univ. Pub. Safety Pers. Ret. Sys. Local Bd.*, 227 Ariz. 216, 222-23, ¶ 27, 255 P.3d 1020, 1026-27 (App. 2011) (citing A.R.S. § 1-213). We derive a word's ordinary meaning by reference to a dictionary. *See State v. Wise*, 137 Ariz. 468, 470 n.3, 671 P.2d 909, 911 n.3 (1983). "If the language is clear and unambiguous, there is usually no need to resort to the rules of statutory interpretation." *Special Fund Div. v. Indus. Comm'n of Ariz.*, 232 Ariz. 110, 113, ¶ 12, 302 P.3d 635, 638 (App. 2013).

**¶17**  Black's Law Dictionary provides two plausible definitions for "may" in this context: (1) "[t]o be permitted to" and (2) "[t]o be a possibility . . . Cf. can." Black's Law Dictionary 1062 (9th ed. 2009). The difference in these two definitions illustrates the two actors potentially capable of decision-making under the statute: the legislature or the member. If the legislature intended the first definition, then the statute granted ASRS members the ability to purchase credited service under the Program only with the legislature's permission, indicating the legislature sought to reserve for itself the power to revoke that permission and modify the Program.[6] If the legislature intended the second definition, then the statute granted ASRS members the possibility of participating in the Program by their own choice, indicating the Program is among the retirement system benefits protected under Article 29, Section 1(C). *Cf. Yeazell*, 98 Ariz. at 114, 402 P.2d at 544 ("That an applicant for retirement may not earn the right to benefits because he does not perform the condition does not mean that from the moment of entrance into the service of [the government] as a [public employee] there is not a firm, binding contract.").

**¶18**  When the language of a statute is ambiguous, "[t]he intent of the legislature . . . may be gathered from statutes relating to the same subject matter—statutes in pari materia." *Frazier v. Terrill*, 65 Ariz. 131, 135, 175 P.2d 438, 441 (1946). Considering other statutes in Title 38,

---

[6]  Supporting this argument, the legislature's use of "may" in A.R.S. § 38-743(A) contrasts with its use of "is entitled" in the formula-based benefit increase statute at issue in *Fields*. *Compare* A.R.S. § 38-743(A) (1996) *with* A.R.S § 38-818(A) ("[E]ach retired member or survivor of a retired member *is entitled* to receive a permanent increase in the base benefit equal to the amount determined pursuant to this section" if one of two conditions are met (emphasis added)); *see also* Black's Law Dictionary 612 (9th ed. 2009) (defining "entitle" as "[t]o grant a legal right to or qualify for.").

Chapter 5, we conclude in this instance the legislature intended "may" to mean "[t]o be a possibility" or "can"; in these statutes, "may" indicates the member is afforded the choice of exercising benefits. *See, e.g.*, A.R.S. § 38-757(A) ("After application on a form prescribed by the director, [an ASRS] member *may* retire on reaching the member's normal retirement date." (emphasis added)); A.R.S. § 38-885(A) ("A member [of the Corrections Officer Retirement Plan] *may* retire if the member" satisfies certain conditions (emphasis added)); A.R.S. § 38-805(C) ("A member [of the Elected Officials' Retirement Plan] . . . who has at least five years of credited service and who ceases to hold office as an elected official *may* take early retirement." (emphasis added)). Further, applying a legislative-permissive definition of "may" in the context of the public retirement system would also jeopardize other basic retirement benefits integral to the public retirement system by leading to the impermissible result that a member's ability to obtain retirement benefits is contingent on future permission by the legislature rather than on the terms of the contract accepted at employment. *Cf. Proksa*, 205 Ariz. at 630, ¶ 16, 74 P.3d at 942 ("[B]y accepting the job and continuing work, the employee has accepted the State's offer of retirement benefits, and the State may not impair or abrogate *that contract* without offering consideration and obtaining the consent of the employee." (emphasis added) (citations omitted)). "If a literal interpretation of statutory language leads to an absurd result, the court has a duty to construe it, if possible, so that it is reasonable and workable." *State Farm Auto. Ins. Co. v. Dressler*, 153 Ariz. 527, 531, 738 P.2d 1134, 1138 (App. 1987) (citations omitted); *see also* A.R.S. § 1-211(B) ("Statutes shall be liberally construed to effect their objects and to promote justice.").

**¶19**        Finally, construing the ambiguity in "may" in § 38-743(A) against an ASRS member would be incongruent with the robust contractual theory of public retirement system benefits recognized by *Yeazell* and confirmed by Article 29, Section 1(C). *See Fields*, CV-13-0005-T-AP, slip op. at ¶ 28, 2014 WL 644467, at *6. "[A]s with all contracts, if the meaning of a[] . . . provision remains uncertain after consideration of the parties' intentions, as reflected by their language in view of surrounding circumstances, a secondary rule of construction requires the provision to be construed against the drafter." *MT Builders, L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 302, ¶ 10, 197 P.3d 758, 763 (App. 2008) (citations omitted). Therefore, in the context of public retirement system benefits, we conclude the legislature intended the word "may" to grant members the possibility of participating in the Program on their own initiative, rather than impliedly reserving for the legislature the power to limit the terms of the Program.

¶20 Because the Program was among the statutorily identified public retirement system benefits in existence in 1998, we conclude the term "benefits" in the Pension Clause encompasses a member's ability to purchase credited service through the Program.[7]

### 2. "Diminishe[s] or Impair[s]" a Benefit

¶21 Turning to the effect of the 2011 legislative amendment of the Program, we conclude the legislation unconstitutionally diminishes an ASRS member's public retirement system benefits by reducing the amount of prior public service available for purchase as credited service.[8] Pursuant to Article 29, Section 1(C), "public retirement system benefits shall not be diminished or impaired." In this case, if the 2011 legislative amendment had not been enacted, Pendergast could have purchased all 9.89 years of prior public service. By capping the amount of prior public service eligible for purchase, the legislation directly diminishes Pendergast's ability to purchase an unlimited amount of credited service pursuant to the version of the Program in existence when the voters passed Proposition 100. Therefore, Pendergast is eligible to purchase 9.89 years of credited service because she was an active member of ASRS in 1998, and the 1998 version of the Program did not limit the amount of prior public service an active ASRS member could purchase as credited service.

### B. Contract Clause Analysis

¶22 We need not conduct an analysis of the 2011 legislative amendment under the Contract Clause of Article 29, Section 1(C) because,

---

[7] Our conclusion is supported by *Buddell v. Bd. of Trs., State Univ. Ret. Sys. of Ill.*, 514 N.E.2d 184 (Ill. 1987) (holding retirement system member's right to purchase credited military service was constitutionally protected retirement system benefit). *See Fields*, CV-13-0005-T-AP, slip op. at ¶ 28, 2014 WL 644467, at *6 ("This definition of 'benefit' also comports with the use of the term in other states that have similar constitutional provisions protecting public pension benefits." (citing with approval *Miller v. Ret. Bd. of Policemen's Annuity*, 771 N.E.2d 431, 444 (Ill. App. Ct. 2001))).

[8] We note the only change from the 1998 version to the 2011 version of A.R.S. § 38-743 before us is the limit on the amount of prior public service available for purchase as credited service into a member's ASRS account.

as discussed above, the Pension Clause provides additional, independent protection to the public retirement system benefit at issue in this appeal.

II.     *Attorneys' Fees on Appeal*

**¶23**     On appeal, we award Pendergast her costs and reasonable attorneys' fees pursuant to A.R.S. § 12-341.01(A), contingent upon compliance with ARCAP 21, because this matter arises out of contract.

## CONCLUSION

**¶24**     We conclude that the 2011 legislative amendment to the public service credit purchase program unconstitutionally diminishes and impairs the public retirement system benefits of an ASRS participant who became a member before the legislative amendment took effect. As a result, we affirm the trial court's determination that Pendergast is eligible to purchase up to 9.89 years of credited service pursuant to the public service credit purchase program as it existed in 1998.



Ruth A. Willingham · Clerk of the Court
FILED: MJT