370 P.3d 132

**Mary WADE and Marla Paddock, Plaintiffs/Appellants,**

v.

**ARIZONA STATE RETIREMENT SYSTEM; Arizona State Retirement System Board, Defendants/Appellees.**

**No. 1 CA–CV 14–0721.**

Court of Appeals of Arizona, Division 1.

March 31, 2016.

Martin & Bonnett, PLLC, By Susan Martin, Daniel L. Bonnett, Jennifer L. Kroll, Phoenix, Co–Counsel for Plaintiffs/Appellants.

Robaina & Kresin, PLLC, By Thomas M. Rogers, Phoenix, Co–Counsel for Plaintiffs/Appellants.

Arizona Attorney General's Office, By Jothi Beljan, Phoenix, Co–Counsel for Defendants/Appellees.

Fennemore Craig, PC, By Patrick Irvine, Phoenix, Co–Counsel for Defendants/Appellees.

Presiding Judge PETER B. SWANN delivered the opinion of the court, in which Judge LAWRENCE F. WINTHROP and Judge DONN KESSLER joined.

---

1. This is an appeal from a judgment entered under Ariz. R. Civ. P. 54(b). Our caption, which should be used in all future filings in this matter, identifies only the parties participating in the appeal.

## OPINION

SWANN, Judge:

¶ 1 A.R.S. § 38–711(7) defines the "compensation" on which employee and employer contributions to the Arizona State Retirement System ("Retirement System" or "ASRS") are calculated. The Retirement System interprets that statute to exclude from "compensation" the City of Chandler's payment of contributions to an eligible deferred compensation plan, and the superior court upheld that interpretation. We disagree. We hold that § 38–711(7) defines "compensation" to include money paid by an employer to a deferred compensation plan, even if the employee could not elect to immediately receive the deferred compensation as cash-in-hand.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The Retirement System[1] is a defined benefit plan, as described in 26 U.S.C. § 414(j), that provides retirement benefits to eligible employees of the State of Arizona and participating political subdivisions and subdivision entities. A.R.S. §§ 38–711(3), (13) and (23), –712. The City of Chandler ("the City") participates in the Retirement System. The City also operates an eligible deferred compensation plan, as described in 26 U.S.C. § 457(b) ("Deferred Compensation Plan").

¶ 3 Marla Paddock is a City employee, as was Mary Wade until she retired; both are members of the Retirement System and the Deferred Compensation Plan. Their annual written employment contracts provided that they were entitled to receive (among other things): a "[s]alary" set at an "annual base" amount; and "annual deferred compensation," expressed in some years' contracts as a dollar amount and in other years' contracts as a percentage of the "base salary." The City deposited the "annual deferred compensation" into the Deferred Compensation Plan in equal bi-weekly payments.

¶ 4 Historically, the City included the "annual deferred compensation" in its calcula-

tion of the employees' annual "compensation" to determine employer and employee contributions to the Retirement System under A.R.S. §§ 38–736(A) and –737(A). In 2011, however, the City ceased this practice based on the advice of a Retirement System employee. Wade and Paddock disputed the changed calculation upon discovering it in late 2012. The City then requested a "more formal opinion" from the Retirement System, and the Retirement System responded by letter that "an employer should not report *employer* contributions to supplemental defined contribution plans on behalf of its contract employees as compensation for ASRS purposes."

¶ 5 Wade and Paddock served a notice of claim on the Retirement System, and then filed a special action class-action complaint against the Retirement System, its Board, and the City, seeking mandamus, declaratory and injunctive relief. The Retirement System moved to dismiss, arguing that the plaintiffs had failed to exhaust their administrative remedies. The parties also filed cross-motions for summary judgment on the issue of whether the City's payments to the Deferred Compensation Plan qualified as "compensation" under A.R.S. § 38–711(7) for purposes of Retirement System calculations.

¶ 6 The court granted the Retirement System's motion to dismiss with respect to Wade, and granted the Retirement System's motion for summary judgment with respect to Paddock. The court held that the definition of "compensation" set forth in § 38–711(7) "is ambiguous, and there are good arguments for both sides' interpretations [, b]ut ASRS's interpretation is the more plausible." The court held that "compensation" under § 38–711(7) includes "salary or wages from which an employee might make deferred compensation payments," but does not include employer contributions made "on top of" the employee's "gross pay."

¶ 7 The court entered judgment on its rulings under Ariz. R. Civ. P. 54(b), and stayed further proceedings pending appellate review. Wade and Paddock timely filed a notice of appeal.

## DISCUSSION

¶ 8 This appeal is limited to two issues: (1) whether summary judgment was properly entered against Paddock based on the conclusion that "compensation" under A.R.S. § 38–711(7) excludes the City's contributions to the Deferred Compensation Plan; and (2) whether Wade was properly dismissed for failure to exhaust administrative remedies. We answer both questions in the negative.

## I. SUMMARY JUDGMENT AGAINST PADDOCK WAS IMPROPER BECAUSE "COMPENSATION" UNDER A.R.S. § 38–711(7) INCLUDES THE CITY'S CONTRIBUTIONS TO THE DEFERRED COMPENSATION PLAN.

¶ 9 We review statutory-interpretation questions de novo. *Dressler v. Morrison*, 212 Ariz. 279, 281, ¶ 11, 130 P.3d 978 (2006). Our primary goal is to determine and give effect to the legislature's intent. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500 (1994). A statute's own words provide the best and most reliable indicator of the legislature's intent; accordingly, we generally follow the text as written when it is plain and unambiguous. *Id.* "We give words their usual and commonly understood meaning unless the legislature clearly intended a different meaning." *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831 (1990). Whenever possible, we must interpret a statute so that "no clause, sentence, or word is rendered superfluous, void, contradictory or insignificant." *State v. Superior Court (Kerr–McGee Corp.)*, 113 Ariz. 248, 249, 550 P.2d 626 (1976). When the language of a statute is ambiguous, we may determine the legislature's intent by looking to other statutes *in pari materia. Pendergast v. Ariz. State Retirement Sys.*, 234 Ariz. 535, 541, ¶ 18, 323 P.3d 1186 (App.2014). We construe public-retirement-system statutes to promote a "robust contractual theory of public retirement system benefits." *Id.* at ¶ 19.

¶ 10 A.R.S. § 38–711(7) provides:

"Compensation" means the gross amount paid to a member by an employer as salary or wages, *including amounts that are subject to deferred compensation or tax shelter agreements,* for services rendered to or

for an employer, or that would have been paid to the member except for the member's election or a legal requirement that all or part of the gross amount be used for other purposes, but does not include amounts paid in excess of compensation limits established in § 38–746.

(Emphasis added.)

¶ 11 Our analysis begins with the plain language crafted by the legislature, which specifically includes "amounts subject to deferred compensation" within the meaning of "compensation." Because the payments in dispute were contractually required payments contributed to a deferred compensation plan, they must be treated as compensation unless other language in the statute provides a basis for their exclusion.

¶ 12 The statute limits "compensation" to the gross amount paid "as salary or wages." The Retirement System reads "salary" as meaning only the deferred compensation that "is already included in an employee's salary or wages." By this, we understand the Retirement System to argue that "salary" includes only amounts that an employee receives or could elect to immediately receive as cash-in-hand.[2] But the statute does not define the term "salary," and no other language supplies the limitation on which the Retirement System relies.[3] Indeed, the remaining language is consistent with an interpretation that all deferred compensation payments are "compensation." For example, if the phrase "amounts that are subject to deferred compensation or tax shelter agreements" were read to mean only "amounts that the employee could otherwise immediately receive in cash," then the statute's express inclusion of amounts "that would have been paid to the member except for the member's election or a legal requirement" would be inconsistent with that definition.

¶ 13 Moreover, the term "salary," as commonly understood, is not necessarily limited

to cash-in-hand payments. *See* Black's Law Dictionary 1364 (8th ed.2004) (defining "salary" as "[a]n agreed compensation for services—esp. professional or semiprofessional services—usu. paid at regular intervals on a yearly basis, as distinguished from an hourly basis"); http://www.merriam-webster.com/ dictionary/salary (last accessed January 4, 2016) (defining "salary" as a "fixed compensation paid regularly for services").

¶ 14 The statute also enumerates multiple types of payments that are excluded from "compensation"—lump-sum termination payments, grievance or claim payments, payments in lieu of fringe benefits, merit awards and performance bonuses, and salary or wages for which the employer has not paid Retirement System contributions. A.R.S. § 38–711(7)(a)–(e), (14). The exclusion of these various forms of remuneration (which do not include deferred compensation) implies that the term "salary" is to be read according to its ordinary meaning, and that payments not excluded are to be included.

¶ 15 The Retirement System contends that because most of the exclusions describe exceptional and irregular types of payments, "salary" must be limited to "the income that the employee normally receives or controls." We have no quarrel with the notion that "salary" generally means a predetermined, regularly paid sum. Indeed, the deferred compensation payments at issue were both predetermined and regular. But the fact that the statute excludes only certain specific exceptional payments demonstrates that the legislature intended to limit the term "salary" only as expressly stated. *See Pima County v. Heinfeld,* 134 Ariz. 133, 134, 654 P.2d 281 (1982) ("A well established rule of statutory construction provides that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed.").

---

2. We decide this case as a matter of law, assuming without deciding that the City's payments are employer contributions that the employees could not elect to receive in cash.

3. *Cf. Ventura Cnty. Deputy Sheriff's Ass'n v. Bd. of Retirement of Ventura Cnty. Employees' Retirement Ass'n,* 16 Cal.4th 483, 490–91, 494, 66

Cal.Rptr.2d 304, 940 P.2d 891 (1997) (construing California statute, which defined "compensation" for retirement-plan purposes as "remuneration paid in cash ... plus any amount deducted from a member's wages," to exclude employer contributions to a deferred compensation plan).

¶ 16 We reject the Retirement System's contention that the statute's reference to amounts "paid to a member" must exclude employer contributions because they are paid directly to the Deferred Compensation Plan. Were we to accept this argument, we would necessarily have to hold that employee contributions are also excluded—a result that would render meaningless the statute's inclusion of amounts subject to deferred compensation agreements. We also reject the Retirement System's contention that including employer-contributed deferred compensation in "compensation" means that employer contributions to the Retirement System itself must be included in "compensation." Such an interpretation would be absurd, yielding compound contribution requirements that would be all but unlimited. There is nothing so sinister in the legislature's express inclusion of deferred compensation payments within the definition of compensation.

¶ 17 The Retirement System next contends that legislative history supports exclusion of employer contributions. It argues that in 1984, Title 38 was revised to exclude irregular payments from the definition of "compensation" but retain a requirement that "compensation" be limited to salary actually and presently received by the member. The Retirement System's argument is inconsistent with the legislative history on which it relies. In addition to enumerating exclusions, the amendment altered the base definition of "compensation" from "the amounts actually received by the participant for remuneration for employment from an employer on an hourly or salaried basis" to "the gross amount paid to a participant by an employer as salary or wages, including amounts which are subject to deferred compensation or tax shelter agreements, for services rendered to or for an employer, or which would have been paid to the participant except for the participant's election or a legal requirement that all or part of the gross amount be used for other purposes." *See* 1984 Ariz. Sess.

Laws, ch. 293, § 1 (1st Reg. Sess.). The Retirement System's contention that the pre–1984 requirement of "actual[ ] recei[pt]" remained by virtue of the use of the term "paid to" in the post–1984 statute ignores the balance of the amendment to the base definition.

█ ¶ 18 We hold, based on the plain language of § 38–711(7), that the term "salary" includes the City's regular contributions to the Deferred Compensation Plan. This construction is consistent with statutes *in pari materia.* Elsewhere in Title 38, in § 38–769(0)(4)(a), the legislature specifically excepted "[e]mployer contributions to a plan of deferred compensation" from a limited-application definition of "compensation." The absence of a similar exception in § 38–711(7) supports the conclusion that § 38–711(7) includes employer contributions. Our interpretation of the term "salary" is also consistent with the concept of compensation used in 26 U.S.C. § 457. Under that statute, *all* deferred compensation below the maximum amount—regardless of origin—receives the same beneficial treatment.[4] *See* 26 U.S.C. § 457(a)(1); 26 C.F.R. § 1.457–4(c), Exs. 2 & 3. And all deferred compensation, including employer contributions, is treated the same with respect to Federal Insurance Contributions Act ("FICA") taxes. *See* 26 U.S.C. §§ 3101(a), 3121(a)(5)(E), (v)(3)(A); *cf. Univ. of Chicago v. United States,* 547 F.3d 773, 782 (7th Cir.2008) (holding that FICA exception for payments made under or to a § 403(b) annuity contract includes mandatory salary reduction agreements).

## II. WADE WAS IMPROPERLY DISMISSED.

¶ 19 The superior court dismissed Wade's claims against the Retirement System on the theory that because she had retired before the complaint was filed and was therefore receiving benefits under the Retirement Sys-

---

4. To be sure, federal tax regulations acknowledge that deferred compensation may take the form of a "salary reduction" or a "nonelective employer contribution" for which the employee could not choose to receive cash—and in this context, the term "salary" has a more narrow meaning than "compensation." 26 C.F.R. § 1.457–2(b)(1), (i).

But the distinction is relevant only to the calculation of the maximum amount of deferred compensation for which the employee may receive deferred income-tax treatment under federal law. *See* 26 U.S.C. § 457(b)(2), (c), (e)(5); 26 C.F.R. § 1.457–4(c), Exs. 2 & 3.

tem, she had failed to exhaust administrative remedies designed to allow benefit adjustments.[5]

¶ 20 A.A.C. § R2–8–401 to –405 establish an administrative procedure for challenging "appealable agency actions" taken by the Retirement System. But Wade's challenge to the statutory interpretation that the Retirement System provided to the City is not an "appealable agency action." Under A.R.S. § 41–1092(3), an "appealable agency action" is "an action that determines the legal rights, duties or privileges of a party and that is not a contested case." The definition excludes "interim orders by self-supporting regulatory boards, rules, orders, standards or statements of policy of general application issued by an administrative agency to implement, interpret or make specific the legislation enforced or administered by it or clarifications of interpretation." *Id.* The Retirement System's interpretation, and Wade's pursuit of declaratory relief with respect to that interpretation, falls within the statutory exclusion.

¶ 21 The Retirement System also argues that Wade could have applied under A.R.S. § 38–738(B) to have it issue an invoice to the City to pay any additional amounts due. We disagree. The only applicable provision in that statute for an employee to seek relief deals with underpaid employer contributions. The Deferred Compensation Plan does not distinguish between employer and employee contributions. Moreover, because the Retirement System had advised the City that the Deferred Compensation Plan contributions were not part of compensation for purposes of Retirement System calculations, any such request for recalculation would have been bound to fail. Accordingly, § 38–738(B) does not provide an administrative

hurdle which Wade had to surmount before seeking judicial relief.

## CONCLUSION

¶ 22 For the reasons set forth above, we reverse the superior court's dismissal of Wade and its entry of summary judgment against Paddock, and remand for proceedings consistent with this decision.

¶ 23 The appellants request attorney's fees on appeal under A.R.S. §§ 12–2030, –348(A)(2), and –341.01. The first two statutes do not apply. First, § 12–2030(A) authorizes a fee award when a party prevails in an action to compel a state officer to perform a duty imposed by law. Though the appellants characterize the appeal as one seeking mandamus relief, their dispute with the Retirement System is that it misinstructed the City to omit its deferred compensation contributions from its reports—not that the Retirement System refused to calculate retirement contributions or pay benefits based on reports that included the City's deferred-compensation payments.[6] The appeal is therefore not actually in the nature of mandamus, *see Fields v. Elected Officials' Retirement Plan,* 234 Ariz. 214, 222, ¶ 40, 320 P.3d 1160 (2014), and, accordingly, § 12–2030(A) does not apply. Second, § 12–348(A)(2) does not apply. That statute governs fee awards in appeals from administrative decisions, and this is not such an appeal.

¶ 24 A.R.S. § 12–341.01, however, applies to this case. That statute authorizes fee awards in actions "arising out of a contract." Though the legal issue in this case turns on the interpretation of a statute, the statute in question defines terms of the appellants' contractual rights to benefits incident to their employment. Article 29, Section 1(C) of the Arizona Constitution provides: "Membership in a public retire-

---

5. The superior court denied the Retirement System's motion to dismiss Paddock. The Retirement System disagrees with that ruling. But it declined to seek appellate relief (available only by way of special action, *N. Propane Gas Co. v. Kipps,* 127 Ariz. 522, 525, 622 P.2d 469 (1980)), and it states on appeal that it will apply this court's ruling on the statutory-interpretation issue to any claim that Wade makes in administrative proceedings.

6. The appellants cite the superior court's determination that "a mandamus action is the appropriate vehicle." But that conclusion was expressly limited to Paddock's claims against the City only. The City is responsible for managing contribution payments. A.R.S. § 38–735; *see also* A.R.S. § 38–716(2). There is nothing in the record to suggest that Paddock ever sought correction of underpayments under § 38–738(B).

ment system is a contractual relationship that is subject to article II, § 25, and public retirement system benefits shall not be diminished or impaired." When a statute defines terms of a contract, our supreme court has held that A.R.S. § 12–341.01 applies to disputes over the interpretation of the statute. *A.H. v. Ariz. Prop. & Cas. Ins. Guar. Fund,* 190 Ariz. 526, 529–30, 950 P.2d 1147 (1997). An award under § 12–341.01 is appropriate here. *See Pendergast v. Arizona State Ret. Sys.,* 234 Ariz. 535, 542, ¶ 23, 323 P.3d 1186 (App.2014).

¶ 25 We therefore award the appellants their reasonable attorney's fees subject to compliance with ARCAP 21. The appellants are also entitled to an award of costs under A.R.S. § 12–341 upon compliance with ARCAP 21.