IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**MARY WADE AND MARLA PADDOCK,**
*Plaintiffs/Appellants,*


*v.*


**ARIZONA STATE RETIREMENT SYSTEM; ARIZONA STATE RETIREMENT SYSTEM BOARD,**
*Defendants/Appellees.*

---

No. CV-16-0087-PR
Filed March 23, 2017

---

Appeal from the Superior Court in Maricopa County
The Honorable Randall H. Warner, Judge
No. CV2013-015082
**REVERSED**


Opinion of the Court of Appeals, Division One
239 Ariz. 263, 370 P.3d 132 (App. 2016)
**AFFIRMED IN PART, VACATED IN PART, REMANDED**

---

COUNSEL:

Susan Martin (argued), Daniel L. Bonnett, Jennifer Kroll, Martin & Bonnett, P.L.L.C., Phoenix; and Thomas M. Rogers, Robaina & Kresin, PLLC, Phoenix, Attorneys for Mary Wade and Marla Paddock

Mark Brnovich, Arizona Attorney General, Dominic Draye, Solicitor General, Paula S. Bickett, Chief Counsel, Civil Appeals Section, Jothi Beljan (argued), Assistant Attorney General, Phoenix, Attorneys for Arizona State Retirement System and Arizona State Retirement System Board

---

JUSTICE TIMMER authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL and BOLICK joined.

JUSTICE TIMMER, opinion of the Court:

**¶1** The Arizona State Retirement System ("ASRS") operates a defined-benefit plan for employees of the state and participating political subdivisions, including the City of Chandler. Both employers and employees contribute to ASRS. The contribution amounts, and the benefits paid to a retired employee, depend on the employee's "compensation" while employed.

**¶2** The City operates a deferred-compensation plan in which it contributes money for its employees and permits employees to defer additional amounts. These monies are invested and held in trust until distributed to employees, generally at age seventy and one-half. Here, we decide whether City-contributed payments into the deferred-compensation-plan trust constitute "compensation" for the purpose of calculating ASRS contributions and benefits. We hold that such payments are "compensation" for ASRS purposes.

## I. Background

**¶3** Employer and employee contributions to ASRS are calculated using a formula tied to employee compensation. Employers must contribute to ASRS based on "a percentage of compensation of all employees" enrolled in ASRS. A.R.S. § 38-737(A). The contribution rate is established annually. A.R.S. § 38-737(C). Employees, referred to as "members," contribute "a percentage of a member's compensation," via payroll deductions. A.R.S. § 38-736(A). Upon retirement, an eligible member receives a monthly life annuity calculated, in part, from "[t]he member's average monthly compensation." A.R.S. § 38-757(B)(2).

**¶4** The City operates a deferred compensation plan, the "457 Plan," which provides retirement income and other deferred benefits to its employees in accordance with 26 U.S.C. § 457(b). The 457 Plan authorizes two contribution methods. An employee can elect to defer some pay from each paycheck. The City can also elect to "credit" "any other amount" to the employee's account. All contributions are held in trust for the exclusive benefit of employees and their beneficiaries. Although income taxes on the amounts are deferred until withdrawal, an employee immediately pays Federal Insurance Contribution Act ("FICA") taxes on amounts contributed

by both the City and the employee. *See* 26 U.S.C. §§ 3101(a), 3121(a)(5)(E), (v)(3)(A).

¶5        Mary Wade served as the City's attorney for about five years until 2013, and Marla Paddock has served as the City's clerk since 2002. Both signed yearly contracts that entitled them to a base salary and periodic, employer-contributed payments into the 457 Plan.  For example, Paddock's 2013 contract entitled her to an "annual base" salary approximating $120,000 plus "annual deferred compensation payment in an amount equal to seven and one-half percent (7.5%) of [Paddock's] annual base salary," payable in equal, bi-weekly amounts.  The City-contributed deferred compensation was exclusive of any deferred compensation that Wade or Paddock elected to contribute to the 457 Plan as employee-deferred compensation.

¶6        The City has historically reported employer-contributed deferred compensation payments to ASRS as "compensation" for the purpose of calculating retirement contributions and benefits.  In 2010, on the advice of an ASRS official, the City stopped this practice.  After Wade and Paddock objected, the City requested "a more formal opinion" from ASRS and pointed out that some employee contracts, like Wade and Paddock's, required the City to make contributions into the 457 Plan.  ASRS responded that "an employer should not report <u>employer</u> contributions to supplemental defined contribution plans on behalf of its contract employees as compensation for ASRS purposes," thereby confirming the City's new practice.

¶7        Wade and Paddock filed a complaint against ASRS and others on behalf of themselves and similarly situated employees seeking declaratory and injunctive relief.  The superior court granted ASRS's motion to dismiss Wade's claims for failure to exhaust administrative remedies.  The court simultaneously entered summary judgment in favor of ASRS and denied Paddock's cross-motion for partial summary judgment on whether the City's contributions to the 457 Plan constituted "compensation" for ASRS purposes.  After finding the definition of "compensation" in A.R.S. § 38-711(7) ambiguous, the superior court concluded that "compensation" includes "salary or wages from which an employee might make deferred compensation payments" but does not include employer-contributed payments to the 457 Plan "on top of salary

or wages." The court entered judgment pursuant to Arizona Rule of Civil Procedure 54(b) and stayed further proceedings pending appellate review.

¶8 The court of appeals reversed both the dismissal order and the summary judgment and remanded for further proceedings. *Wade v. Ariz. State Ret. Sys.*, 239 Ariz. 263, 269 ¶ 22, 370 P.3d 132, 138 (App. 2016). As pertinent here, the court concluded, based on the "plain language" of § 38-711(7), that "the term 'salary' includes the City's regular contributions to the [457 Plan]." *Id.* at 268 ¶ 18, 370 P.3d at 137. The court also awarded attorney fees to Wade and Paddock pursuant to A.R.S. § 12-341.01. *Id.* at 270 ¶ 24, 370 P.3d at 139.

¶9 ASRS petitioned for review of the court of appeals' holding regarding the meaning of § 38-711(7) and the court's attorney fee award under § 12-341.01. (ASRS does not challenge reversal of the dismissal order.) We granted review because these issues are of statewide importance and are likely to recur. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II. Discussion

¶10 We review the interpretation of statutes de novo. *Glazer v. State*, 237 Ariz. 160, 163 ¶ 12, 347 P.3d 1141, 1144 (2015). Our primary goal is to effectuate the legislature's intent. *Id.* "If the statute is subject to only one reasonable interpretation, we apply it without further analysis." *Id.* But when a statute is ambiguous, "we consider other factors, including the context of the statute, the language used, the subject matter, its historical background, its effects and consequences, and its spirit and purpose." *Id.* (citation and internal quotation marks omitted).

### A. "Compensation" under § 38-711(7)

¶11 Section 38-711(7) defines "compensation" as:

[T]he gross amount paid to a member by an employer as salary or wages, including amounts that are subject to deferred compensation or tax shelter agreements, for services rendered to or for an employer, or that would have been paid to the member except for the member's election or a legal

requirement that all or part of the gross amount be used for other purposes . . . .

**¶12**   Section 38-711(7) is subject to more than one reasonable interpretation. By including amounts "subject to deferred compensation or tax shelter agreements," the statute injects uncertainty about legislative intent. At first blush, this phrase encompasses any monies governed by a deferred compensation or tax shelter agreement—including employer-contributed amounts. On the other hand, because compensation is "paid to" a member, the definition reasonably could refer only to payments a member elects to defer from salary or wages the member would otherwise have immediately received. We therefore disagree with the court of appeals that § 38-711(7) plainly means that all deferred compensation deposits are "compensation." *See Wade*, 239 Ariz. at 268 ¶ 18, 370 P.3d at 137. The statute is ambiguous.

**¶13**   We therefore turn to secondary principles of statutory interpretation to ascertain the legislature's intent. After doing so, we agree with the court of appeals that the most plausible view is that the legislature intended to include employer-contributed deferred compensation, as paid by the City under the conditions here, as "compensation" under § 38-711(7). *See id.*

**¶14**   First, these payments form part of the "salary" "paid to a member." A.R.S. § 38-711(7). The legislature did not define "salary," so we give the word its common meaning. *See Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19, 28 ¶ 32, 365 P.3d 944, 953 (2016). Webster's defines "salary" as "fixed compensation paid regularly (as by the year, quarter, month, or week) for services." Webster's Third New International Dictionary 2003 (2002); *see also* Black's Law Dictionary 1537 (10th ed. 2009) (defining "salary" as "[a]n agreed compensation for services – esp. professional or semiprofessional services – usu. paid at regular intervals on a yearly basis").

**¶15**   The annual employment agreements between the City and Paddock unconditionally required the City to contribute deferred compensation, payable in regular, equal installments, in exchange for employment services. These amounts were paid in addition to Paddock's "base salary." The City contributions are held in trust for Paddock's

exclusive benefit, and will be "paid to" her or her beneficiaries at a future date. *See* A.R.S. § 38-711(7). This is no different than if the City had made the contribution amounts immediately available to Paddock and she elected to defer payment under the 457 Plan. ASRS acknowledges that employee-elected deferred compensation is "compensation" under § 38-711(7). No reason appears to treat the City's contributions differently.

¶16 The cases relied on by ASRS do not persuade us to reach a different conclusion. In *Kerr v. Killian*, 207 Ariz. 181, 182 ¶ 1, 84 P.3d 446, 447 (2004), this Court addressed whether Arizona's income tax scheme violates the intergovernmental tax immunity doctrine. In reciting case history, the Court stated that although employee and employer contributions to a retirement plan "would seem to be current taxable income to the employee [because] the former comes out of the employee's salary, while the latter is plainly a benefit conferred by the employer," federal tax law provided otherwise. *Id*. at 182–83 ¶ 4, 84 P.3d at 447–48. But whether an employer contribution is "a benefit" rather than part of "salary" was not at issue, and we do not read the passing statement as remarking on the matter.

¶17 In *Ventura County Deputy Sheriffs' Ass'n v. Board of Retirement of Ventura County Employees' Retirement Ass'n*, 940 P.2d 891, 898 (Cal. 1997), the California Supreme Court concluded that "compensation," as used in laws creating a government pension plan, did not include employer-contributed deferred compensation payments. Unlike here, however, California law defined "compensation" as including "an amount deducted from a member's wages for participation in a deferred compensation plan," leaving "no room for inclusion" of employer contributions not deducted from wages. *Id*. (internal quotation marks omitted).

¶18 Second, limiting "amounts that are subject to deferred compensation or tax shelter agreements" to employee-deferred amounts, as ASRS argues, would render that language superfluous. *Cf. Fields v. Elected Officials' Ret. Plan*, 234 Ariz. 214, 218 ¶ 16, 320 P.3d 1160, 1164 (2014) (recognizing that courts construe statutes to avoid making parts superfluous). Other language in § 38-711(7) defines "compensation" as including amounts "that would have been paid to the member except for the member's election . . . that all or part of the gross amount be used for other purposes," i.e., employee-deferred amounts. Including employer-

contributed payments into a deferred–compensation-plan trust gives meaning to all language in § 38-711(7).

¶19 Third, the legislature's treatment of employer-contributed deferred compensation in calculating maximum retirement benefits supports our interpretation. *Cf. David C. v. Alexis S.*, 240 Ariz. 53, 55 ¶ 9, 375 P.3d 945, 947 (2016) ("Statutes that are in pari materia—those of the same subject or general purpose—should be read together and harmonized when possible."). Section 38-769(O)(4)(a) excludes from "compensation" "[e]mployer contributions to a plan of deferred compensation to the extent the contributions are not included in the gross income of the employee for the taxable year in which contributed." The absence of a similarly specific exception in § 38-711(7) suggests that the legislature intended to include such contributions as "compensation" when paid as salary or wages.

¶20 ASRS's remaining arguments are unpersuasive. It asserts that counting City-contributed deferred compensation as "compensation" means the City's ASRS contribution must also be considered "compensation." Even if this is so, ASRS fails to explain how this compels a different conclusion. Regardless, whether an employer's ASRS contributions are "compensation" is not before us. We note, however, that because an employee's "compensation" is used to calculate ASRS contribution amounts from employers and employees, the legislature treated compensation and contributions as separate components. It is doubtful, therefore, that it intended to include the contribution amounts as "compensation" for calculating contribution amounts.

¶21 Finally, ASRS urges us to defer to its interpretation of § 38-711(7) as a matter within its expertise. *See Ariz. Water Co. v. Ariz. Dep't of Water Res.*, 208 Ariz. 147, 154 ¶ 30, 91 P.3d 990, 997 (2004) ("[When] the legislature has not spoken definitively to the issue at hand, 'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.'" (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984))). In *Arizona Water Co.*, no specific statutory provision addressed the issue presented, and this Court therefore gave great weight to the agency's view as adopted in a groundwater management plan. *See id.* at 153 ¶ 22, 155 ¶ 31, 91 P.3d at 996, 998. Here, the legislature explicitly defined "compensation" in § 38-711(7), and we are able to ascertain legislative intent by applying

interpretive principles. *Cf. Chevron*, 467 U.S. at 843 n.9 (stating that "[t]he judiciary is the final authority on issues of statutory construction" and "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect"). There is no reason to defer to ASRS's interpretation.

¶22　　　In sum, the City's contractually required contributions into the 457 Plan trust for the benefit of Paddock forms part of her salary and is "compensation" under § 38-711(7). We therefore agree with the court of appeals that the superior court incorrectly entered summary judgment for ASRS as against Paddock. (As noted previously, *see supra* ¶ 9, ASRS does not challenge here the reversal of the trial court's order dismissing Wade's complaint.)

## B. Attorney fees

¶23　　　After we granted review in this case, this Court decided *Hall v. Elected Officials' Retirement Plan*, which resolved the attorney fee dispute here. 241 Ariz. 33, 45 ¶ 37, 383 P.3d 1107, 1119 (2016). ASRS nevertheless asks us to reconsider the matter. We decline to do so. The court of appeals correctly decided that the dispute here arose from contract, and § 12-341.01 therefore authorized an attorney fee award.

## III. Conclusion

¶24　　　For the foregoing reasons, we vacate paragraphs eleven and eighteen of the court of appeals' opinion and otherwise affirm the opinion as it concerns the summary judgment and the attorney fee award.

¶25　　　We reverse the superior court's entry of summary judgment against Paddock. The court of appeals' reversal of the order dismissing Wade's complaint was not challenged here and remains intact.

¶26　　　We award Wade and Paddock their reasonable attorney fees incurred in this Court. Although the court of appeals also awarded them fees, it had not determined the amount before ASRS filed its petition for review. Accordingly, we remand to the court of appeals to determine the

amount of fees to be awarded for proceedings before that court and this Court.