IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

UNEMPLOYED WORKERS UNITED, et al.,
*Plaintiffs/Appellants*,

v.

DOUGLAS DUCEY, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 22-0054
FILED 9-27-2022

Appeal from the Superior Court in Maricopa County
No.  CV2021-014027
The Honorable Katherine Cooper, Judge

**AFFIRMED**

COUNSEL

Osborn Maledon, PA, Phoenix
By Joshua David Rothenberg Bendor, Joshua J. Messer
*Co-Counsel for Plaintiffs/Appellants*

Barton Mendoza Soto, PLLC, Tempe
By James E. Barton, II
*Co-Counsel for Plaintiffs/Appellants*

Law Office of Paul Gattone, Tucson
By Paul J. Gattone
*Co-Counsel for Plaintiffs/Appellants*

National Legal Advocacy Network, Chicago, IL
By Christopher J. Williams, Sheila Maddali
*Co-Counsel for Plaintiffs/Appellants*

Fennemore Craig, PC, Phoenix
By Timothy J. Berg, Brett Gilmore, Lyndsey Maasch
*Counsel for Defendants/Appellees*

Community Legal Services, Phoenix
By Pamela M. Bridge
*Counsel for Amicus Curiae Community Legal Services*

William E. Morris Institute for Justice, Phoenix
By Andrew P. Schaffer, Brenda Munoz Furnish
*Counsel for Amicus Curiae William E. Morris Institute for Justice*

---

**OPINION**

Presiding Judge David D. Weinzweig delivered the opinion of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.

---

**W E I N Z W E I G**, Judge:

**¶1**        Arizona law requires the Arizona Department of Economic Security ("ADES") to "[t]ake such action as may be necessary to secure to this state and its citizens all advantages available under the provisions of [four federal unemployment acts]." *See* A.R.S. § 23-645(2). We must decide whether that law required ADES to secure unemployment benefits under the CARES Act, enacted by Congress in response to the COVID-19 pandemic. Because it did not, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        COVID-19 arrived in America and Arizona in the last ten days of January 2020, generating twin medical and economic emergencies. The economic emergency was abrupt. In April 2020 alone, the nation's unemployment rate jumped by more than ten percent. *See* U.S. Department of Labor, Bureau of Labor Statistics.[1]

**¶3**        And so, on March 25, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, better known as the CARES Act. Among its programmatic reach, the CARES Act created and funded the

---

[1]        *See* United States Bureau of Labor Statistics, *Unemployment rate rises to record high 14.7 percent in April 2020*, (May 13, 2020), www.bls.gov/opub/ted/2020/unemployment-rate-rises-to-record-high-14-point-7-percent-in-april-2020.htm.

Federal Pandemic Unemployment Compensation program ("FPUC"), a supplemental payment of unemployment benefits for qualified unemployed workers during the pandemic. All 50 states were invited to join the FPUC program, which was voluntary, and the states were assured they could leave the program on 30 days' written notice. *See* 15 U.S.C. § 9023(b)(3)(A)(i).

**¶4** Two days later, Governor Ducey signed into law a directive for ADES to join the FPUC program, and ADES entered a written agreement with the federal government, which confirmed that ADES could leave the program on 30 days' written notice.

**¶5** Nearly 64 weeks after entering the agreement, on July 10, 2021, Governor Ducey directed ADES to exit the agreement. The federal government continued funding the FPUC program for 58 more days, and it expired nationally on September 6, 2021. *See* 15 U.S.C. § 9023(b)(3)(A)(ii), (e)(2).

**¶6** This lawsuit followed in October 2021, seeking a writ of mandamus and request for declaratory and injunctive relief against ADES and Governor Ducey (collectively, "the State"). The plaintiffs are three Arizona residents who lost their job because of the pandemic, and a New York non-profit organization named Unemployed Workers United (collectively, the "Workers"). The Workers alleged that the State violated Arizona law, specifically A.R.S. § 23-645(2), by exiting the pandemic unemployment program 58 days before its natural end. They sought a court order directing the State to retroactively secure 58 more days of benefits for eligible Arizonans.

**¶7** The superior court denied relief, finding that "Arizona law [did] not compel [the State] to obtain FPUC benefits," which the court characterized as "an optional CARES Act benefit that states could start and stop at their discretion." Workers timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶8** This appeal presents an issue of statutory interpretation that we review de novo. *Schwarz v. City of Glendale*, 190 Ariz. 508, 510 (App. 1997). "Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018) (internal citation omitted). "If the statute is subject to only one reasonable interpretation, we apply it without further analysis." *Stambaugh*

*v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017) (quoting *Wade v. Ariz. State Ret. Sys.*, 241 Ariz. 559, 561 ¶ 10 (2017)).

**¶9**         At the heart of Workers' argument is A.R.S. § 23-645, which was adopted by the legislature in 1977.  Section 23-645 requires the Arizona Department of Employment Security to:

> Take such action as may be necessary to secure to this state and its citizens all advantages available under the provisions of the social security act that relate to unemployment compensation, the federal unemployment tax act, the Wagner-Peyser act and the federal-state extended unemployment compensation act of 1970.

**¶10**         Workers contend this statute required ADES to secure FPUC benefits because FPUC benefits were an "advantage[] available under" the social security act and the federal-state extended unemployment compensation act of 1970 ("1970 Act").  They first argue that FPUC benefits were an "advantage[] available under" the social security act because Congress directed the Department of Labor to distribute FPUC benefits through preexisting "Social Security infrastructure" and "methods of administration."

**¶11**         We are not persuaded.  First, the FPUC program and FPUC benefits were created and funded by Congress under the CARES Act—not the social security act or the 1970 Act.  *Compare* 15 U.S.C. §§ 9021, 9023, 9025 (pandemic unemployment benefits), *with* 42 U.S.C. §§ 301–1397 (social security) *and* Federal-State Extended Unemployment Compensation Act of 1970, Pub. L. No. 91-373, 84 Stat. 708 (codified in a note to 26 U.S.C. 3304).  Unlike the social security and 1970 acts, Congress enacted the CARES Act to triage the economic catastrophe sparked by the COVID-19 pandemic.  *See Holcomb v. T.L.*, 175 N.E.3d 1177, 1183 (Ind. Ct. App. 2021) (explaining FPUC benefits represented a "temporary" measure to "provide[] different benefits to more types of people and for different amounts of time," and its unemployment benefits represented "a supplement to traditional [unemployment] benefits during an unprecedented pandemic").

**¶12**         Second, Congress did not amend the social security act to fund FPUC benefits; nor did the Arizona legislature amend Section 23-645(2) to reach FPUC benefits under the CARES Act.  *See Canon Sch. Dist. No. 50 v. W.E.S. Const. Co. Inc.*, 177 Ariz. 526, 529 (App. 1994) ("[W]e are reluctant to construe the words of a statute to mean something other than what they plainly state.").  By contrast, Congress did amend the social

security act in the Families First Coronavirus Response Act. *See* Pub. L. 116-127 § 4102, 134 Stat. 178, 192–93 (amending Section 903 of the Social Security Act, 42 U.S.C. § 1103).

¶13　　　Third, FPUC benefits did not morph into an "advantage[] available under" the social security act simply because the federal government used "Social Security infrastructure" and "methods of administration" to distribute FPUC benefits. The pandemic represented a hard stop on our state's economy. It caused an unprecedented spike in the unemployment rate, and sparked an immediate need to distribute billions of dollars to millions of unemployed persons. Because it had no time to blaze a new administrative path, Congress turned to the time-tested, well-worn "Social Security infrastructure" and "methods of administration." *See* 15 U.S.C. § 9021(g)(1)(A).

¶14　　　Fourth, FPUC benefits did not morph into an "advantage[] available under" the 1970 Act merely because Congress borrowed seven definitions from the 1970 Act when crafting the CARES Act. *See* 15 U.S.C. § 9023(i)(1), (2) (defining "compensation," "regular compensation," "benefit year," "State," "State agency," "State law" and "week"). Workers offer no legal authority for the point that two distinct, self-reliant statutes become one when they share some definitions.

¶15　　　All but one court presented with this issue has reached the same decision. *See Brannon v. McMaster*, 864 S.E.2d 548, 550 (S.C. 2021) ("The only connection the Programs have to the [social security act] is that the funds to be distributed to recipients pass through bank accounts of the Social Security Administration. This is not sufficient to render benefits paid under the Program to be 'advantages available under the provisions of the [social security act].'"); *Holcomb*, 175 N.E.3d at 1183 ("Utilizing this established accounting system and specifying how funds should be moved around and made available for distribution is entirely different from creating a new federal benefit program, which the CARES Act is."); *Caron v. New Hampshire et al.*, 2021-CV-00423, slip op. at 7 (Sup. Ct. N.H. Sept. 27, 2021) ("[S]imply because PUA 'benefits are distributed by utilizing the same accounting systems used to fund the administrative costs of the state [unemployment insurance] programs' under the [social security act,] it does not follow that the PUA benefits themselves are 'advantages available under the [social security act].'"). And the outlier has been accepted for review. *See State ex rel. Bowling v. DeWine*, 2021 WL 3733205, at *11, ¶¶ 45–47 (Ohio).

## CONCLUSION

¶16      We affirm.

